53 N.J. Super. 388 (1959)
147 A.2d 290
AMERICAN RIETER COMPANY, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD N. DINALLO ET ALS., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1958.
Decided January 5, 1959.
*390 Before Judges CONFORD, FREUND and HANEMAN.
Mr. Aaron Heller argued the cause for defendants-appellants (Messrs. Heller & Laiks, attorneys; Mr. Murray A. Laiks, of counsel).
Mr. Bernard Shurkin argued the cause for plaintiff-respondent.
The opinion of the court was delivered by FREUND, J.A.D.
Plaintiff instituted this action to obtain an injunction against, and to recover damages for, the defendants' use of a sewer system under the plaintiff's property. The Chancery Division, finding no proof of damages, ordered an injunction requiring the defendants to disconnect their attachments from the sewer system "forthwith." Pending the disposition of defendants' appeal to this court, that judgment was stayed.
On January 20, 1953 defendants Richard N. Dinallo and Vincinio P. Carnecchia, trading as Caldwell Enterprises (Caldwell), purchased a tract of approximately 20 acres of land in West Caldwell, located at the intersection of Clinton Road and Passaic Avenue, with the intention of developing it for industrial purposes. The municipality does not have a public sewer system servicing the area of which Caldwell's tract is a part; although there is an ordinance *391 authorizing such an installation, the work has not been performed. As a result, Caldwell installed its own sewer system running under part of the 20 acres. The sewer lines form a "U," at the bottom right corner of which is a pumping station located at the point where Clinton Road intersects Passaic Avenue. Clinton Road corresponds with the right line of the "U"; Passaic Avenue, the bottom line.
On June 13, 1956 Caldwell sold and conveyed to the plaintiff, American Rieter Co., Inc. (Rieter), for $36,200 that part of its tract under which the sewer lines and pumping station are located. The 4.5-acre parcel conveyed to Rieter has a 400-foot frontage on Passaic Avenue; i.e., from the point at which the sewer line intersects Passaic Avenue to the corner of Clinton Road. Except for the frontage on these two streets, Rieter's property is bounded by the lots which Caldwell retained.
In the contract of sale and in the deed, the parties inserted provisions reserving to Caldwell an easement as to that strip of land conveyed under which lie the sewer lines and pump. Caldwell agreed as part of the easement to service Rieter's land for sewerage, and to remove the pumping station and abandon the easement when the municipal system took over the operation. The deed contains the following language:
"The easement described above and reserved to the Grantors is specifically reserved for the purpose of enabling the Grantors to maintain the present sewage system and drainage and sewer pipes which exist over part of said easement, and further, to enable the Grantors, their heirs, executors, administrators, successors and assigns to further continue the installation of sewage lines, which sewer and drainage will be maintained by the said Grantors, their heirs, executors, administrators, successors and assigns for the maintenance over the said sewer, which sewer services the lands herein conveyed as well as other lands now owned by Grantors.

* * * * * * * *
All of the rights herein granted to the Grantors, in the easement mentioned above, shall run to the Grantors, their heirs, executors, administrators, successors or assigns, and shall run with the land and all of the obligations of the Grantors relating thereto shall inure to the benefit of the Grantee, its successors and assigns, and likewise shall run with the land. * * *" (Emphasis added.)
*392 The property across Clinton Road at the corner of Passaic Avenue, beyond the right side of the U-shaped system, is owned by the defendant Levin Corporation and leased to an Acme Supermarket. In January 1957 the Levin Corporation, with the consent and permission of Caldwell, constructed a sewer line for its property, extended it under Clinton Road, and tied it into the pumping station on plaintiff's property for the purpose of disposing of its sewerage. It is conceded that Caldwell never owned the land upon which is located the Acme Supermarket.
Rieter's theory in instituting this action is that the Levin connection to the sewer, actually made by the defendant Joseph Shur, a plumbing contractor, constitutes a trespass, and that Caldwell had no right to authorize the "hook-in" since the easement was reserved only to service lands owned by Caldwell at the time of the conveyance to Rieter. Defendants countered with the argument that the language of the instrument, quoted above, does not admit of such a limited construction, but was intended to and does permit Caldwell to authorize owners of nearby properties to tie into the system.
Defendants offer two grounds for reversal: (1) the construction by the Chancery Division of the operative words in the deed is erroneous, and (2) the court erred in excluding evidence bearing upon the actual intentions of the parties to the deed. In the alternative, defendants seek to have modified the "forthwith" provisions of the judgment.
The trial judge rested his decision on a finding that the easement reserved by the deed was an easement appurtenant and not in gross, and therefore exclusively for the benefit of the dominant tenement. In our judgment also, there is no question but that an easement appurtenant was reserved. In 17A Am. Jur., Easements, § 12, p. 628, it is said:
"Where the reservation of an easement naturally operates to enhance the value of the other adjacent lands of the grantor, it would seem that the easement was intended to be appurtenant to the estate, *393 and not merely personal to the grantor * * * If doubt exists, an easement is presumed to be appurtenant, and not in gross."
See also United States Pipe Line Co. v. Delaware, L. & W.R. Co., 62 N.J.L. 254, 274 (E. & A. 1898); Diocese of Trenton v. Toman, 74 N.J. Eq. 702, 709 (Ch. 1908); Restatement, Property, § 483, comment, clause (c), at p. 3019. The deed in question shows plainly that the easement was intended to benefit Caldwell's retained lands. In addition, it expressly states that the easement "shall run with the land."
Defendants do not dispute the proposition that an easement appurtenant cannot be used for a purpose unconnected with the enjoyment of the dominant tenement. United States Pipe Line Co. v. Delaware, L. & W.R. Co., supra, 62 N.J.L. at page 281; 2 American Law of Property (Casner ed. 1952), §§ 8.6, 8.13, and 8.73. Indeed, it has frequently been stated that the servient tenement is not to be subjected to a greater burden than the parties contemplated at the time the easement was created. See, e.g., Leasehold Estates, Inc. v. Fulbro Holding Co., 47 N.J. Super. 534, 553 (App. Div. 1957), certification granted 25 N.J. 538 (1958).
But defendants seek to escape from the legal consequences that eventuate from classifying their interest as an easement appurtenant by contending that they are protected by the provision allowing Caldwell "to further continue the installation of sewage lines." This language, however, is not inconsistent with an easement appurtenant. In keeping with the tenor of the entire deed, it must be construed as allowing Caldwell the right to continue sewer lines to service buildings that might be constructed on the other undeveloped lots then owned by it. It would be unrealistic to assume that what was meant by "further continue the installation" was to continue it across the street to property owned by strangers. Moreover, the parties themselves described the scope of the easement granted as limited to a system servicing "the lands herein conveyed as well as other lands now owned by Grantors." In view of these plain *394 provisions, we are without the opportunity to apply the established principle that an ambiguity in the terms of an easement will be construed against the grantor. See Hyland v. Fonda, 44 N.J. Super. 180, 187 (App. Div. 1957); Leasehold Estates, Inc. v. Fulbro Holding Co., supra, 47 N.J. Super. at page 553; Lidgerwood Estates, Inc. v. Public Service Elec. & Gas Co., 113 N.J. Eq. 403, 408 (Ch. 1933).
Much of what we have said with respect to the clarity and completeness of expression in the language of the deed is responsive to the second point argued by the defendants. In the trial court defendants sought to adduce testimony by Philip J. Levin, president of the Levin Corporation and builder of the Acme Supermarket, that he had engaged in negotiations with Caldwell relative to allowing the Acme sewers to be tied into Caldwell's sewer system and that these negotiations preceded Caldwell's sale to plaintiff by about a year. Defendants contended that Levin's testimony would have demonstrated that Caldwell, in dealing with Rieter, could not have had the intention to consent to an easement that would foreclose its rights to approve of Levin's use of the system. The trial judge sustained plaintiff's objection to this testimony on the ground that Caldwell's "undisclosed intentions" were not binding on plaintiff. Defendants now urge that the trial judge erred in not permitting himself to consider this as one of the "surrounding circumstances," circumstances which, it is said, must be resorted to as an aid in the construction of the extent of the easement. See, generally, 2 American Law of Property (Casner ed. 1952), § 8.65; Restatement, Property, § 483, comment, clause (a), p. 3012; Annotation, 61 A.L.R.2d 1390 (1958).
We regard the point as without merit. In the first place, courts give effect to the mutual, not the unilateral, intention of the parties. See Moses v. Edward H. Ellis, Inc., 4 N.J. 315, 322 (1950); Fletcher v. Interstate Chemical Co., 94 N.J.L. 332 (Sup. Ct. 1920), affirmed 95 N.J.L. 543 (E. & A. 1921). Consequently, evidence of surrounding circumstances indicative of the intent only of the defendants and not of the plaintiff would not be of any probative value.
*395 In the second place, we perceive no basis for holding that the trial judge's ruling prejudiced defendants in any respect. Defendants' brief informs us what the substance of Levin's testimony would have been, and there is nothing contained therein that could illuminate the unambiguous language of the agreement to show a purported meaning not apparent from the language, within the reasoning of such cases as Casriel v. King, 2 N.J. 45, 50 (1949); Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953), and Schnakenberg v. Gibraltar Savings and Loan Ass'n, 37 N.J. Super. 150, 155, 156 (App. Div. 1955). Where the meaning intended to be revealed by evidence of the surrounding circumstances attending the execution of the instrument is not consistent with the only reasonable meaning that can be gleaned from the terms as written, the intention as expressed in the instrument must prevail. Evidence of an intention wholly unexpressed in the writing, while technically admissible in the first instance, becomes irrelevant where the language of the instrument does not permit itself to be accommodated thereto. Since the only meaning that can reasonably be attributed to the deed in question was that an easement appurtenant was created and intended, we conclude that defendants were not prejudiced by the exclusion of Levin's testimony.
As stated, the Chancery Division ordered the defendants, Joseph Shur and Levin Corporation, to disconnect any attachments to the sewer lines or pumping station "forthwith." In view of the circumstance that there is no municipal system in the area and that the only other alternative for defendants appears to be the use of septic tanks which, if the municipality approves, will take time to construct, the "forthwith" provision is modified. Defendants are given 60 days from the filing of this opinion to disconnect their sewer line and to restore plaintiff's property to the same condition it was in prior to the connection.
As modified, the judgment below is affirmed.