In re Michael BENDE, individually and transacting as Michael Properties, Debtor.

PLURAL REALTY INC., as Assignee and Successor–In–Interest to Poughkeepsie Savings Bank, F.S.B., Plaintiff,

v.

Michael BENDE, individually and transacting as Michael Properties, Defendant.

Bankruptcy No. 91–32869–BKC–RAM. Adv. No. 92–0812–BKC–RAM–A.

United States Bankruptcy Court, S.D. Florida.

Jan. 28, 1993.

Memorandum Revising Decision on Motion to Amend or for New Judgment March 9, 1993.

Elizabeth Bohn, Jorden Schulte & Burchette, Miami, FL, for plaintiff.

Keith A. Goldbaum, Zwick, Friedman & Goldbaum, Boca Raton, FL, for defendant/debtor.

## MEMORANDUM OF DECISION

CHARLES J. MARRO, Bankruptcy Judge, Sitting by Special Designation.

This Court has jurisdiction of this proceeding under 28 U.S.C. § 157 and 28 U.S.C. § 1334(d) as well as the General Order of Reference of the United States District Court for the Southern District of Florida.

This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52 as made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Plaintiff by its complaint seeks declaratory and Injunctive Relief regarding its right to continue to use a sewer line and lift station constructed by the Debtor–Defendant which provides sewage disposal for a Shopping Center now owned by the Plaintiff through foreclosure of a mortgage.

An evidentiary hearing was held and as part thereof the parties have agreed to certain proposed findings. Based on the evidence and the proposed findings submitted by agreement the Court makes the following determinations:

### FINDINGS OF FACT

By deed dated August 5, 1983 the defendant, Michael Bende, an individual trading as Michael Properties, acquired from New Plan Realty Trust certain tracts or parcels of land and premises situated in the Township of Old Bridge, County of Middlesex, State of New Jersey, known as Lots 9–A, 13 and 14 as shown on the Tax Map of the Township of Old Bridge.

After the acquisition of said property Bende improved it by constructing a shopping center thereon known as Fairway Plaza Shopping Center ("FAIRWAY PLAZA").

In 1978, Aaron and Mala Rosenblum, et al., then owners of Lot 18.11 (formerly known as Lots 17 and 18) in Block 10259, Township of Old Bridge, Middlesex County, New Jersey (hereafter "Lot 18.11"), granted an easement to FAIRWAY PLAZA, INC., then owner of Lots 9–A, 13 and 14, Block 10259, Township of Old Bridge, Middlesex County, New Jersey (hereafter the "FAIRWAY PLAZA PROPERTY"), to "construct, alter and maintain a sewer line on Lot 18.11, as well as ingress and egress over Lot 18.11 for proper use and maintenance of said sewer line, which easement provides that it "shall run with the land."

At the time he acquired it, the FAIRWAY PLAZA was fully operational, occupied by commercial tenants, and utilized on-site septic tanks for sewage disposal.

In 1984, the Debtor acquired lot 18.11, which adjoins the FAIRWAY PLAZA PROPERTY, by Deed from Aaron and Mala Rosenblum, et al. As of the time of the filing of the petition for relief in this cause, the Debtor owned, and continues to own, Lot 18.11.

In 1985, the Debtor received approval from the Old Bridge Municipal Utility Sewerage Authority to connect FAIRWAY PLAZA to the Old Bridge municipal sewer system via a pipe to be installed on-site at the FAIRWAY PLAZA PROPERTY through a sewage lift station to be constructed on Lot 18.11, which in turn would pump the sewage through additional pipe through property owned by the Board of Education, to connect to and discharge the sewage into the town sewer system at a connection point on Sylvan Street. After construction this sewer system was used to service FAIRWAY PLAZA.

In 1985, MICHAEL BENDE obtained an easement from the Old Bridge Township Board of Education to install and maintain a portion of the sewer line intended to connect FAIRWAY PLAZA to the city sewer system through Lots 19.12 and 20, Block 10259, owned by the Board of Education and adjoining Lot 18.11.

On February 3, 1987, POUGHKEEPSIE SAVINGS BANK (the "BANK") agreed to loan the Debtor $2,500,000.00 to be secured by a valid first mortgage on FAIRWAY PLAZA, including terms that the mortgaged property would have sewerage facilities available and, if any utilities were obtained from private sources, or were across other private property, easements would be obtained, and the Debtor's rights in same would be covered by the mortgage.

On March 3, 1987, the BANK loaned the Debtor $2,500,000.00 evidenced by a note in said amount in favor of the BANK executed by the Debtor on that date, and secured by a mortgage, also executed by the Debtor (the "MORTGAGE"), in favor of the BANK, on the FAIRWAY PLAZA PROPERTY. Said mortgage encumbered the FAIRWAY PLAZA PROPERTY, "together with all buildings, structures, and improvements thereon situate or which may hereafter be erected or placed thereon, and all and singular the tenements, hereditaments, appurtenances and easements thereunto belonging or in anywise appertaining, and the rents, issues and profits thereof."

As of the date the MORTGAGE was executed, the on-site septic tank system was the only means of sewage disposal operable at and servicing FAIRWAY PLAZA.

In May of 1987, the Debtor commenced construction of the pump station on Lot 18.11 and new sewer line from the FAIRWAY PLAZA PROPERTY through the pump station on Lot 18.11, and through the Board of Education property, and, when completed, connected it to the town sanitary sewer system.

The Debtor completed construction of the new sewer line from FAIRWAY PLAZA to the municipal sewer system through Lot 18.11 and the Board of Education property in August 1987, at which time he discontinued the use of the on-site septic tank system, and back-filled the septic tanks on the FAIRWAY PLAZA PROPERTY.

The Debtor did not obtain written consent or approval from the BANK before constructing the new sewer line and pump station on Lot 18.11, or, before back-filling and discontinuing the on-site septic tank disposal system.

From the time construction was completed in August of 1987, the pump station and sewer line on Lot 18.11, which continues through the Board of Education property, have been the sole operating means of sewage disposal for FAIRWAY PLAZA and have provided sewage disposal exclusively for FAIRWAY PLAZA.

As a result of the Debtor's default under the NOTE and MORTGAGE, in October 1990, the BANK commenced a foreclosure action in the Superior Court of New Jersey, Middlesex County, Chancery Division, Docket No. F–12911–90 upon FAIRWAY PLAZA which resulted in the entry of a Final Judgment of Foreclosure entered by the Court on April 30, 1991, in the total sum of $2,745,830.43.

In October, 1991, the Debtor filed his petition for relief in this Court as a result of which foreclosure sale in the New Jersey case was stayed.

On November 26, 1991, this Court entered an order granting the BANK relief from stay, subject only to the limitation

that foreclosure sale be scheduled on or after January 20, 1992, finding that the debt owed to the BANK on the MORTGAGE as of that date was $3,006,531.75.

The amounts due the BANK under the Final Judgment of Foreclosure remain unpaid and exceed the sum of $3,000,000.

On March 11, 1992, the sheriff of Middlesex County conducted foreclosure sale, at which the property was sold to the BANK.

On March 27, 1992, the BANK assigned its successful bid at sheriff's sale to Plaintiff PLURAL REALTY, INC.

PLURAL REALTY, INC. is a wholly owned subsidiary of the BANK formed by the BANK to hold title to real estate acquired by the BANK through foreclosure until ultimate sale.

PLURAL REALTY, INC. intends to sell the FAIRWAY PLAZA PROPERTY on behalf of the BANK and apply the proceeds of sale to the amounts due the BANK under the Final Judgment of Foreclosure.

PLURAL REALTY, INC. now holds title to the FAIRWAY PLAZA PROPERTY and FAIRWAY PLAZA pursuant to sheriff's deed dated May 11, 1992, conveying the property "and all appurtenances thereto" to PLURAL REALTY, INC.

The operating expenses associated with operating the pump station for the benefit of FAIRWAY PLAZA consist of electric bills for the pump station, and bills for repair and maintenance. The BANK paid certain operating expenses associated with the pump station until March of 1992.

The cost of constructing the new sewage system including the obtaining of necessary easements, permits and the pump station was approximately $350,000.00.

The Debtor has interfered with PLURAL REALTY, INC.'s use of the pump station and sewer line on Lot 18.11 by "forbidding" its use, and has demanded payment of "rent" for use of same in the amount of $100,000 per year.

The BANK and Plaintiff have refused to pay the Debtor the rent demanded by Debtor.

The Debtor intended to use the new sewage system to service both FAIRWAY PLAZA and an addition thereto to be constructed by him on Lot 18.11 and, to finance said addition, he obtained a commitment from Poughkeepsie Savings Bank, the assignor of the Plaintiff for a loan of $500,000.00 for a period of one year from March 30, 1987. The Debtor never availed himself of this commitment.

The Debtor did not inform the Bank that it was going to construct the new sewage system, that the pump station was on other property or that he was going to charge rent for its use.

The Bank first learned about the new sewage system in a letter from the Debtor to it dated September 22, 1987 wherein the Debtor stated:

"In addition we are happy to report that a new $250,000.00 sanitary sewer system was commissioned at Fairway Plaza during the month of August."

The actual cost was $385,603.74.

The old on site sewage system has been back filled, is not being used and the cost of making it operable would, at a minimum, be $200,000.00. In addition it would be most difficult, if not impossible, to obtain the necessary permits because of environmental requirements and its present connection to the municipal sewer system.

During the period of ownership of FAIRWAY PLAZA by the Debtor the old sewage system had functional and operational problems. It would not be reasonable or feasible to use this system as a means of servicing this property.

*CONCLUSIONS AND DISCUSSION*

Plural Realty, Inc., as assignee of the Poughkeepsie Savings Bank and as the now owner of the FAIRWAY PLAZA premises by virtue of a Final Judgment of Foreclosure entered by the Chancery Division of the Superior Court of New Jersey on April 30, 1991 and a Sheriff's Deed to it dated May 11, 1991, contends that it has the right to use the new sewage disposal system constructed from its property through Lot 18.11, the pump station over

property of the Board of Education to the town sewer system on Sylvan Street.

It argues that the easement is appurtenant to the Center premises and "runs with the land" to all successors and assigns of the prior owner's interest in the land; i.e. to Plaintiff and its successors. 25 Am. Jur.2d § 95 wherein it is stated:

"Thus an easement, appurtenant to land, created or acquired by a mortgagor or his grantee subsequently to execution of the mortgage on the dominate estate, passes under the mortgage, although not specifically mentioned therein, and inures to the benefit of the mortgagee or the 'purchaser at the foreclosure sale and his grantee, except where the mortgage indicates a contrary intention."

It is also the position of the plaintiff that at common law the Plaintiff as owner of the property enjoys all easements appurtenant to the Center especially since the Debtor mortgaged to the Bank the described premises, TOGETHER WITH ALL ... appurtenances and easements thereto belonging or in anywise appertaining.

The new sewage system, the Plaintiff asserts, constitutes an easement appurtenant, "whereas in the land, concerns the premises and pertains to its enjoyment...." As such it satisfies all of the elements of an implied quasi-easement. 25 Am Jur.2d § 11.

■ The evidence adduced at the hearing supports the plaintiff's position. The express language in the mortgage describes as the mortgaged premises all buildings, structures and improvements thereon situate or which may hereafter be erected or placed thereon and all and singular the tenements, hereditaments, appurtenances and easements, thereunto belonging or in anywise appertaining and the rents, issues and profits, thereof.

When the Debtor developed the property as a shopping center he constructed a sewage system which was indispensable to its use. The commitment for the mortgage required an adequate sewage system and the parties thereto clearly understood that this condition had to be satisfied. After the Debtor discontinued the use of the on site sewage system he replaced it with the new system and continued to use it for the benefit of the Plaza property until the foreclosure of the mortgage was complete. There was a continuous use since its construction in 1987 which tends to establish that an implied quasi-easement was created. 25 Am Jr.2d § 27; *Cale v. Wanamaker,* 121 N.J.Super. 142, 296 A.2d 329.

■ The new sewage system created an appurtenant easement. This is defined as an incorporeal right which is attached to, and belongs with, some greater or superior right—something annexed to another thing more worthy and which passes as an incident to its enjoyment. It is incapable of existence separate and apart from the particular land to which it is annexed.

■ Two distinct elements are involved in the case of an appurtenant easement—the dominant, to which the right belongs, and the servient, upon which the obligation rests. An easement to be appurtenant must bear some relationship to the use of the dominant estate, and must agree in nature and quality with the thing to which it is claimed to be appurtenant. 25 Am Jur.2d § 11; *Village of Ridgewood v. The Bolger Foundation et al.* 104 N.J. 337, 517 A.2d 135; *Weber v. Dockray* 2 N.J.Super 492, 64 A.2d 631; *American Rieter Co. v. Dinallo et al.* 53 N.J.Super. 388, 147 A.2d 290. The new sewage system falls within the elements of an appurtenant easement and, as such, inures to the benefit of the Plaintiff.

■ The enjoyment of the new sewer line includes unobstructed use of the pump station. *American Rieter Company, Inc. v. Dinallo et al.,* supra. It also includes the use of the easement conveyed by the Board of Education to the Debtor even though the Center property is not contiguous to land of said Board. 25 Am Jur.2d § 11; *Tide–Water Pipe Co. v. Bell* 28 Pa. 104, 124 § 351.

■ The Court rejects the Debtor's argument that the clause in the mortgage relating to the easement is ambiguous. The key words under which the Plaintiff is

claiming are "appurtenances and easements thereto belonging or in anywise appertaining." An interpretation of them and the cases construing their meaning support the Plaintiff's position. It is also an exaggeration to attach a hybrid label to them.

■ The Court is convinced that the Plaintiff is entitled to the use of the new sewage system but at the same time supports the Debtor's claim that he should receive compensation for such use.

■ The Bankruptcy Court has generally been recognized as one of equity. As such and, in the exercise of equitable principles, a party should not be unjustly enriched. The plaintiff should not be the recipient of an unfair advantage at the expense of the debtor.

The Plaintiff, under the terms of the mortgage, was originally entitled to the on site tank sewage system burdened with all of its functional and operational defects, no more and no less. However, the substituted easement was extremely more efficient and was tied into the town sewer system thereby eliminating the future problems the Plaintiff would have to endure had the original system been continued. The Plaintiff did not expect and was not entitled to a better system. The latter was constructed at a cost of $385,603.74. The restoration of the on site tank system would cost a minimum of $200,000.00 which would have to be borne by the Plaintiff.

A balancing of the equities would produce a fair result by requiring the Plaintiff to pay to the Debtor for the use of the new system annually the same rate of interest as the Debtor paid under the mortgage on the sum expended for its construction.

In accordance with this Memorandum of Decision a separate order, pursuant to Rule 9021 of the Federal Rules of Bankruptcy Procedure, is being entered.

## MEMORANDUM ON MOTION OF PLAINTIFF TO AMEND FINDINGS, CONCLUSIONS AND FOR ENTRY OF NEW JUDGMENT

The Court has before it a Motion of Plaintiff To Amend Findings, Conclusions and For Entry of New Judgment which was received on March 2, 1993.

The attorney for the Debtor–Defendant, Michael Bende, has advised the Court that it does not intend to submit any documentation in opposition to this Motion.

The Court has reviewed the allegations in the Motion as well as the memorandum in support thereof and makes the following observations and determinations:

1. It is immaterial whether the shopping center had already been constructed on the property.

■ 2. The failure of the Defendant to comply with Rule 12(b) Fed.R.Civ.P. by not pleading a counterclaim or raised it as an affirmative defense does not alter the result. The Plaintiff was fully aware before instituting its action for injunctive relief that the Defendant was demanding $100,000.00 a year as "rent" for use of the substituted easement. In fact this was in part the basis for the commencement of the action by the Plaintiff.

■ 3. The Court does not agree with Plaintiff that the Debtor is not entitled to equitable relief by virtue of its "unclean hands." It is true that Debtor did not inform the Bank that it was going to construct the new sewage system. However, it did learn from a letter dated September 22, 1987 sent to the Bank by the Debtor that a new sanitary sewer system had been commissioned during the month of August and the Bank failed to voice any objection.

■ 4. The Court recognized that it erred in starting the payments to the Debtor on April 30, 1991, the date of the Final Judgment of Foreclosure, rather than on May 11, 1992 when the Plaintiff acquired title through a sheriff's deed. In making this mistake the Court applied the law of strict foreclosure which obtains in some states the effect of which is to transfer title on the date of the Decree of Foreclosure. However, under New Jersey statutory law title does not pass until a conveyance to the purchaser at foreclosure sale by the sheriff. Hence the date of pay-

ments by the Plaintiff shall commence on May 11, 1992 and continue as long as the substituted easement is used by the Plaintiff.

The Court confirms all other findings and conclusions.

A revised Judgment Order is being entered in accordance with this memorandum.