DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SEVEN KINGS HOLDINGS, INC.,** a Florida for-profit corporation,
Appellant,

v.

**MARINA GRANDE RIVIERA BEACH CONDOMINIUM ASSOCIATION,
INC.,** a Florida not-for-profit corporation, and **MHC RIVIERA BEACH,
LLC,** a foreign limited liability company,
Appellees.

No. 4D22-2084

[June 21, 2023]

CORRECTED OPINION

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm
Beach County; Paige Gillman, Judge; L.T. Case No.
502020CA010900XXXXMBAK.

Raymond M. Masciarella II, West Palm Beach, for appellant.

Robert Rivas and Joel Kenwood of Sachs Sax Caplan, PL, Boca Raton,
for appellee Marina Grande Riviera Beach Condominium Association, Inc.

LEVINE, J.

A condominium, Marina Grande, entered into an agreement with its
neighbor, Inlet Marina, to build a parking garage on Marina Grande's
property. As part of the agreement, Inlet Marina received an easement to
use 75 parking spaces in Marina Grande's parking garage. Years later,
Inlet Marina attempted to assign its easement in the parking garage to a
third party, Seven Kings. Marina Grande claimed that this assignment
was invalid. The trial court granted summary judgment on Marina
Grande's claim for declaratory relief, finding that the assignment of the
parking garage easement from Inlet Marina to Seven Kings was not legally
enforceable. We agree, and as such, we affirm. On the remaining issue
raised, we affirm without further comment.

## Procedural History

In 2004, the City of Riviera Beach approved Inlet Harbor Marina's site plan application for the Inlet Harbor Marina Planned Unit Development ("PUD"). The PUD included, in part, a boat storage marina facility (the "marina") and a residential condominium unit, the Marina Grande Riviera Beach Condominium (the "condominium"). After the PUD was approved, the marina and the condominium entered into a Development Agreement. The Development Agreement stated, in part, that the marina would be entitled to use parking spaces in the condominium's parking garage:

> 6. Garage. The [condominium] intends to construct a garage as shown on the Plan of Development ("Garage"), which Garage shall include seventy five (75) vehicular parking spaces ("Parking Spaces") located on the ground floor, with a separate distinct entrance and exit providing ingress and egress from the Parking Spaces to the [marina] for the exclusive use of the [marina] ("Accessway"). . . . [The marina] shall at all times have an easement for reasonable utilization of the 75 Parking Spaces, together with appurtenant access thereto in the area generally shown on Exhibit G attached hereto and made a part hereof . . . .

The marina and the condominium also entered into a Reciprocal Easement Agreement, providing for a "Parking Space and Accessway Easement":

> The [condominium] intends to construct, among other things, a parking garage ("Garage") on the Residential Property as shown on the Plan of Development which shall include, among other things, seventy-five (75) vehicular parking spaces and access drive thereto in the area shown on **EXHIBIT G** (the "Parking Spaces") to be located on the ground floor of the Garage for the exclusive use by the [marina] and its successors, assigns, mortgagees, purchasers at foreclosure, designees, tenants and invitees, with access thereto being provided via a separate and distinct entrance and exit providing ingress and egress from the Parking Spaces to the [marina] . . . .

The condominium built the parking garage, and the marina proceeded to use its easement to the parking garage for many years. In October of 2016, Seven Kings Holdings, Inc., leased an adjacent space, separate from the Inlet Harbor Marina PUD, for use as a restaurant. The marina entered

an Easement Dedication Agreement with Seven Kings. For consideration of $4,000 per year, the marina sought to grant an "Access and Parking Easement" to Seven Kings:

> By this instrument and subject to its terms and conditions, the [marina] hereby grants and conveys (i) a non-exclusive easement over the Easement Area to [Seven Kings] and [Seven Kings]'s employees, agents, contractors, tenants, invitees and licenses (all of the foregoing persons and invitees including without limitation, [Seven Kings], are hereinafter referred to as the "[Seven Kings] Permitted Persons") for parking in the parking spaces located within the Easement Area and (ii) a non-exclusive easement for ingress, egress and access over, across and upon the paved portions of Easement Area to [Seven Kings] and [Seven Kings] Permitted Persons for pedestrian and vehicular traffic to access Blue Heron Boulevard from the Drives, parking spaces in the Easement Area and the [Seven Kings] Property.[1]

The condominium, the residential portion of the PUD, was not a party to the Easement Dedication Agreement.

The condominium opposed Seven Kings's plans to develop an adjacent restaurant. Due to the condominium's "concerns about the proposed development," the condominium and Seven Kings eventually entered an Agreement for Conditions of Development. The agreement consisted of provisions on the contested elements of Seven Kings's restaurant development. Regarding parking, the agreement stated:

> B. PARKING: Seven Kings agrees to implement, if and as may be needed, a valet parking plan for the Restaurant operations. Seven Kings further agrees to limit its use of the [condominium] parking garage to no more than eight (8) key employees, which eight (8) employees will be issued bar code

---

[1] The Easement Dedication Agreement was set to terminate at the discretion of Seven Kings, the grantee. ("It is the intent of the Grantor and the Grantee that this Agreement and the rights and obligations hereunder shall terminate on the earlier of (i) the date which Grantee, or Grantee's successors or assigns (including the owner of Grantee's Property), commences construction of a residential tower on Grantee's Property or any portion thereof or (ii) the date that Grantee designates in writing to Grantor or Grantor's assigns an election to terminate this Agreement ("Termination Date"), whereupon as of the Termination Date, this Agreement shall terminate and the rights and obligations of the Grantor and Grantee under this Agreement shall terminate as of the Termination Date.").

stickers, access cards or fobs, as then used by the [condominium], and will provide the [condominium] with the names of such employees together with vehicle information, similar to, but without additional requirements or in a discriminatory manner, what is required of other permitted users of the [condominium] parking garage ("Limitation"). Such Limitation shall not include individuals that may have a right to park within the [condominium] parking garage unrelated to the Restaurant, including, by way of example and not limitation, marina customers, [condominium] owners and renters, and their respective guests and invitees.

The Agreement for Conditions of Development was later amended to specify that those eight parking spaces "shall be limited to those parking spaces identified in the Reciprocal Easement Agreement . . . on the ground floor of the Garage."  The marina was not a party to the Agreement for Conditions of Development.

The condominium subsequently filed a declaratory action against Seven Kings and the marina.[2]  The condominium argued that the easement appurtenant created by the Reciprocal Easement Agreement could not be transferred separate and apart from the dominant tenement, the marina.  The condominium requested a declaration that the Easement Dedication Agreement between the marina and Seven Kings, purporting to grant Seven Kings rights to the marina's easement over the condominium's parking garage, was legally unenforceable and, thus, invalid.

The condominium filed a motion for summary judgment, arguing that the easement could not be transferred separately from the marina and that the Easement Dedication Agreement granted the easement to the marina, not Seven Kings.  Further, the motion argued that Seven Kings abandoned its claim to the 75 parking spaces by modifying its claim to eight spaces in the Agreement for Conditions of Development and that Seven Kings's affirmative defenses were not sufficient to defeat summary judgment.

Seven Kings filed a motion for partial summary judgment, arguing that the Easement Dedication Agreement between Seven Kings and the marina was valid and enforceable because the scope of the easement that the marina had originally received from the condominium allowed it to be assigned as "designees."  Seven Kings also argued that the parking garage easement had not been severed from the dominant tenement, the marina,

---

[2] The marina was sold in 2017.  MHC Riviera Beach, LLC, an appellee in this action, is now the owner of the marina.

4

because the Easement Dedication Agreement merely transferred a non-exclusive right to use the parking spaces, and the language in the Easement Dedication Agreement permitted use of the parking garage easement by designees of the marina. The president of the marina, who was also president of Seven Kings, stated in an affidavit that the parties to the Reciprocal Easement Agreement, the marina and the condominium, intended the parking garage easement to be a fee ownership transfer with all rights that attach to ownership.

The trial court granted the condominium's motion for summary judgment and denied Seven Kings's motion for partial summary judgment. The trial court determined that the easement conveyed from the condominium to the marina was an easement appurtenant, which could not be assigned separately from the dominant estate, that being the marina. Thus, the trial court found the portion of the Easement Dedication Agreement purporting to allow Seven Kings the right to use the condominium's parking garage pursuant to the marina's easement was invalid and thus unenforceable. The trial court also rejected Seven Kings's argument that the Easement Dedication Agreement did not sever the easement, but instead designated the marina's easement, and held that there was no language in the relevant instruments permitting the transfer of the easement to Seven Kings. This appeal follows.

## **Analysis**

This court reviews the entry of summary judgment de novo. *Orlando v. FEI Hollywood, Inc.*, 898 So. 2d 167, 168 (Fla. 4th DCA 2005). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *In re Amends. to Fla. R. Civ. P. 1.510*, 309 So. 3d 192, 192 (Fla. 2020) (citation omitted). Under the new Florida summary judgment standard, "[a] party opposing summary judgment 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* at 193 (citation omitted).

An easement may either be appurtenant or in gross. *Palm Beach County v. Cove Club Invs. Ltd.*, 734 So. 2d 379, 388 n.13 (Fla. 1999). An easement in gross is a "mere personal interest[] in land that [is] not supported by a dominant estate." *Dunes of Seagrove Owners Ass'n v. Dunes of Seagrove Dev., Inc.*, 180 So. 3d 1209, 1211 (Fla. 1st DCA 2015). "[A]n appurtenant easement is a permanent easement running with the land and passes as an incident to it." *Morris v. Winbar LLC*, 273 So. 3d 176, 178-79 (Fla. 1st DCA 2019). Easements in gross are not necessarily adjacent to the land, whereas easements appurtenant are adjacent to the

dominant estate. The trial court determined that the Reciprocal Easement Agreement created an easement appurtenant.[3]

An appurtenant easement includes both a dominant tenement and a servient tenement. "The easement holder possesses the dominant tenement, while the owner of the land against which the easement exists possesses the servient tenement." *Dianne v. Wingate*, 84 So. 3d 427, 429 (Fla. 1st DCA 2012). In this case, the marina was the dominant tenement while the condominium, as owner of the garage, was the servient tenement. Since an easement appurtenant runs with the land, it can be transferred with the dominant tenement. *Behm v. Saeli*, 560 So. 2d 431, 432 (Fla. 5th DCA 1990) (citing Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land* § 8.01 (1988)).

Because an easement appurtenant attaches to a dominant tenement, the right to use the parking garage could be transferred from the marina to Seven Kings only if the marina, the dominant tenement and the land benefitting from the easement, had also been transferred:

> An easement appurtenant cannot exist apart from a dominant tenement and can be transferred only by transfer of the dominant property. Such a servitude may not be transferred separately from the land to which it is appurtenant, *and an instrument purporting to transfer such an interest is ineffective.*

Bruce & Ely, *supra*, § 9.2 (emphasis added).

Thus, the Easement Dedication Agreement, which attempted to transfer the parking garage easement individually to Seven Kings, was ineffective because the parking garage easement cannot exist apart from the dominant tenement, the marina. Restatement (Third) of Prop. (Servitudes) § 5.6 (2000) ("[A]n appurtenant benefit may not be severed and transferred separately from all or part of the benefited property."). As a result, the trial court did not err by holding that the portions of the Easement Dedication Agreement purporting to transfer the parking garage easement were invalid.

---

[3] On appeal, Seven Kings does not challenge the trial court's finding that the easement granted to the marina was an easement appurtenant. Moreover, there is a legal presumption in favor of easement appurtenants, as easements in gross are not favored by the courts. *Devino v. 2436 E. Las Olas, LLC*, 306 So. 3d 118, 119-20 (Fla. 4th DCA 2020).

6

Other courts have agreed with this conclusion. A federal court concluded that an easement appurtenant is not independently alienable:

> Florida law recognizes that the rights conveyed by an easement appurtenant are "attached to and belong[] with some greater or superior right as a dominant estate." *N. Dade Water Co. v. Fla. State Turnpike Auth.*, 114 So. 2d 458, 461 (Fla. 3d DCA 1959). *See also In re Bende*, 152 B.R. 677, 682 (Bankr. S.D. Fla. 1933) ("[An easement appurtenant] is incapable of existence separate and apart from the particular land to which it is annexed."); *Dianne v. Wingate*, 84 So. 3d 427, 429 (Fla. 1st DCA 2012) ("The easement holder possesses the dominant tenement[.]").

> This is consistent with the common law position that "an appurtenant benefit may not be severed and transferred separately from all or part of the benefited property." *Restatement (Third) of Property: Servitudes* § 5.6 (2000). *See also Fruth Farms v. Village of Holgate*, 442 F. Supp. 2d 470, 476 (N.D. Ohio 2006) ("One cannot separate an easement appurtenant from the dominant estate. An easement appurtenant cannot, therefore, be assigned to another person separately from the dominant tenement.") (internal citations omitted)); *Kapp v. Norfolk Southern Ry. Co.,* 350 F. Supp. 2d 597, 606 (M.D. Pa. 2004) ("[An easement] is not independently alienable but is conveyed concurrently with the estate to which it is tied."); *Rosen v. Keeler,* 986 A.2d 731, 740 (N.J. Super. Ct. App. Div. 2010) ("Treatises dealing with the topic are in universal agreement that absent a clear intent to the contrary in the instrument creating the easement an easement appurtenant benefits only those with a possessory interest in the dominant estate, and such benefit cannot be assigned to third parties independent of the dominant land to which it is appurtenant." (internal citation omitted)).

*Spear v. Old Republic Nat'l Title Ins. Co.*, No. 3:12-cv-231-MW/CJK, 2013 WL 12099358 at *3-4 (N.D. Fla. Sept. 24, 2013) (alterations in original).

The restriction on severing an easement appurtenant from a dominant tenement also applies even to the conveyance of an easement for a set term of years. In *Schwartzman v. Schoening*, 669 N.E.2d 228 (Mass. App. Ct. 1996), the condominium conveyed to the condominium unit owner, with the condominium unit, the right to use two designated parking spaces. *Id.* at 229. The condominium unit owner then attempted to execute a ninety-

nine-year lease to another person for the use of the parking spaces that were reserved to the condominium unit owner. *Id.* In the declaratory action, the Massachusetts court found that the right to use the parking spaces was a property interest appurtenant to that condominium unit. *Id.* The court held that, as an easement appurtenant, the right to use the parking spaces "is not independent of and severable from [the condominium unit]." *Id.* The court relied both on the governing documents and established law. *Id.* at 230 ("The inseparability of the parking spaces from the unit to which they exclusively were reserved is not inconsistent with the law of real property upon which the defendants rely."). Thus, the court held that, "[t]reated as an easement appurtenant to Unit 9, the right to exclusive use of the parking spaces is, by definition, 'incapable of existence separate and apart from the particular land to which it is annexed.'" *Id.* (quoting Black's Law Dictionary 509 (6th ed. 1990)); *see also City of Orlando v. MSD-Mattie, L.L.C.*, 895 So. 2d 1127 (Fla. 5th DCA 2005) (declining to allow appellant to lease an easement in gross because the proposed use was beyond the easement's scope).

Seven Kings relies on a New Hampshire case, *Ettinger v. Pomeroy Ltd. Partnership*, 97 A.3d 1133 (N.H. 2014), for the proposition that an easement appurtenant can be transferred separate from the dominant estate if the language of the easement allows. However, *Ettinger* is distinguishable. In *Ettinger*, the owner of the dominant tenement acquired an additional adjacent parcel. *Id.* at 1135. A subsequent owner purchased a portion of the owner's parcels, containing both a portion of the dominant tenement and most of the additional adjacent parcel. *Id.* The owner of the servient tenement sued, "asserting that the easement . . . may benefit only [the original lot], and may not benefit [the additionally purchased adjacent lot]." *Id.* at 1136. The *Ettinger* court remanded for further proceedings, relying on previous cases holding that "the mere addition of other land to the dominant estate does not necessarily constitute an overburden or misuse of [an] easement." *Id.* at 1138 (alteration in original) (citation omitted).

We find *Ettinger* distinguishable from the instant case. Here, in this case, Seven Kings does not own any portion of the marina, the dominant tenement which is benefitted by the parking garage easement. Unlike the easement in *Ettinger*, Seven Kings is not seeking to add additional land to a dominant tenement, but rather share an easement appurtenant with an unrelated parcel.

Seven Kings also argues that the plain language of the governing documents allowed the marina to designate Seven Kings as a user of the parking space easement because the Reciprocal Easement Agreement

specified that the users of the parking space easement included "designees" of the marina. We find that this argument fails as well. The Reciprocal Easement Agreement states that the parking space easement is "for the exclusive use by the [marina]." *See Schwartzman*, 669 N.E.2d at 221, 223 (holding that the easement granting a particular unit the "exclusive right to use" the parking spaces was, "by definition, 'incapable of existence separate and apart from the particular land to which it is annexed.'") (citation omitted). A passing reference to "designees" falls significantly short of demonstrating a "clear intent to the contrary" in the Reciprocal Easement Agreement between the marina and the condominium. *Rosen*, 986 A.2d at 740 ("Treatises dealing with the topic are in universal agreement that absent a *clear intent to the contrary* in the instrument creating the easement an easement appurtenant benefits only those with a possessory interest in the dominant estate, and such benefit cannot be assigned to third parties independent of the dominant land to which it is appurtenant.") (emphasis added).[4]

Finally, the marina's president attempts to justify the easement by stating that the parties' intent when entering the Reciprocal Easement Agreement was for the easement be a fee simple transfer of the parking spaces. That is incorrect since "[a]lthough an easement is a real property interest in land, it is a right distinct from ownership of the land itself and does not confer title to the land on which the easement is imposed." *Dianne*, 84 So. 3d at 429. Therefore, the Reciprocal Easement Agreement could not have transferred the parking garage spaces to the marina in fee simple.

We find that the easement granting the marina the right to use 75 spaces in the condominium parking garage was not severable from the

---

[4] Seven Kings also argues that the condominium conceded the right to use the parking garage when it relied on the Agreement for Conditions of Development and its addendum by arguing that it had modified Seven Kings's claim to the eight parking spaces. This argument also fails. Most importantly, as the owner of the parking garage, the condominium undoubtedly had the right to grant Seven Kings an easement for use of spaces in the parking garage. Additionally, the condominium did not concede that Seven Kings had the right to use the 75 parking spaces by granting Seven Kings the use of eight parking spaces. Neither the Agreement for Conditions of Development nor the addendum references Seven Kings's alleged right to use the 75 parking spaces in the condominium's parking garage. Additionally, the Agreement for Conditions of Development is not properly in front of this court because, at this time, the condominium has not deprived Seven Kings of the right to use those eight parking spaces it granted in the Agreement for Conditions of Development.

dominant tenement.  Thus, the provisions in the Easement Dedication Agreement purporting to grant Seven Kings the right to use the 75 parking spaces were invalid, and, thus, unenforceable.  We affirm.

*Affirmed.*

FORST and ARTAU, JJ., concur.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**