

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-1-1998

# Gibbs v. United States

Precedential or Non-Precedential:

Docket 97-5815,98-5099

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Gibbs v. United States" (1998). *1998 Decisions.* Paper 273.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/273

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 1, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 97-5815 and 98-5099

ESTATE OF JAMES C. GIBBS, SR.;
JAMES C. GIBBS, JR., EXECUTOR,
        Appellants in No. 98-5099

v.

UNITED STATES OF AMERICA,
        Appellant in No. 97-5815

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 96-cv-00685)

Argued October 6, 1998

BEFORE: SLOVITER and COWEN, Circuit Judges and
POLLAK,* District Judge

(Filed December 1, 1998)

        Gilbert S. Rothenberg, Esq.
        Thomas J. Sawyer, Esq. (Argued)
        Annette M. Wietecha, Esq.
        U.S. Department of Justice
        Tax Division
        P.O. Box 502
        Washington, DC 20044

         Counsel for Appellant/Cross-
         Appellee
_____

*Honorable Louis H. Pollak, U.S. District Judge for the Eastern District
of Pennsylvania, sitting by designation.

Brian M.P. Monahan, Esq.
Lauer & Monahan
704 Washington Street
Easton, PA 18042

Joseph C. Hollywood, Esq. (Argued)
732 Washington Street
Easton, PA 18042

  Counsel for Appellees/
  Cross-Appellants Estate of
  James C. Gibbs, Sr. and
  James C. Gibbs, Jr., Executor

Joseph L. Yannotti, Esq.
Office of the Attorney General of
 New Jersey
Richard J. Hughes Justice Complex
Trenton, NJ 08625

  Counsel for Amicus Curiae-
  Appellees/Cross-Appellants
  Estate of James C. Gibbs, Sr. and
  James C. Gibbs, Jr., Executor

OPINION OF THE COURT

COWEN, Circuit Judge.

James C. Gibbs, Jr. ("taxpayer"), executor of the estate of James C. Gibbs, Sr., initiated this action in the District Court for the District of New Jersey against the United States for a refund of estate taxes paid under the recapture tax provision of S 2032A of the Internal Revenue Code. The lawsuit turns on the resolution of a question offirst impression: did taxpayer dispose "of any interest" in his family farm by granting the State of New Jersey a development easement in that farm in exchange for $1.4 million? The district court, relying on New Jersey state law, answered in the negative and granted summary judgment to taxpayer.

Contrary to the district court, we conclude that, under applicable federal law, the grant of a development easement

2

was a disposition of an interest in the farmland. Accordingly, we will reverse.

I.

James C. Gibbs, Sr. owned and operated a dairy farm at the time of his death on November 7, 1984. At that time, the property had a fair market value of $988,000 based on its highest and best use. Its highest and best use, however, was not as a dairy farm, but for development. If the property could only be used for farming purposes, its value was $349,770.

Taxpayer was the executor of his father's estate and its sole heir. On July 24, 1985, he filed an estate tax return on behalf of the estate. In that return, pursuant to S 2032A of the Internal Revenue Code, taxpayer elected to value the real property component of the farm based on its special use as farmland instead of its highest and best use for development. This election resulted in tax savings of $218,328. In making this election, taxpayer, as required under the statute, agreed to be personally liable for any additional estate tax due (the "recapture tax") if he disposed of any interest in the property within ten years of his father's death.

On December 21, 1993, taxpayer and the State of New Jersey executed a "Deed of Easement" pursuant to which New Jersey received a development easement in the farmland and taxpayer received $1,433,493.72.[1] New Jersey purchased this development easement pursuant to the "Agriculture Retention and Development Act," N.J. Stat. Ann. SS 4:1C–11 to 48 ("Agriculture Retention Act"), which was enacted, among other reasons, to strengthen New

_____

1. Although not expressly articulated in the New Jersey statute, development easements are closely akin to the more commonly referenced "conservation easements," which one commentator has described as "interests in land that represent the right to prevent the development or improvement of the land for any purpose other than conservation." Vivian Quinn, Preserving Farmland with Conservation Easements: Public Benefit or Burden?, 1992/1993 Ann. Surv. Am. L. 235, 238 (1994); see also Uniform Conservation Easement Act S1(1), 12 U.L.A. 170 (1996) (defining conservation easement).

Jersey's agricultural industry and to preserve farmland in the State. See N.J. Stat. Ann. S 4:1C-12 (setting forth legislative findings). In conjunction with related legislation, the Agriculture Retention Act created a state agriculture committee to oversee New Jersey's conservation efforts, and county agricultural boards to carry them out. See N.J. Stat. Ann. SS 4:1C-4, 4:1C-14. The committee and boards are authorized to "acquire development easements, [and] to purchase fee simple absolute title to farmland for resale with agricultural deed restrictions for farmland preservation purposes." N.J. Stat. Ann. S 4:1C-8; see also N.J. Stat. Ann. S 4:1C-31.

The Deed of Easement specifies that the "Grantor" of the easement is James C. Gibbs, Jr., both in his individual capacity and as executor of the estate, along with his daughter, Diane Gibbs; the Warren County Board of Chosen Freeholders -- acting as an arm of the State of New Jersey -- is designated as the "Grantee."[2] The operative language of the Deed of Easement is as follows: "The Grantor, Grantor's heirs . . . successors and assigns grants and conveys to the Grantee a development easement" on the farmland. It also provides that "[a]ny development of the Premises for nonagricultural use is expressly prohibited," and that such restrictions "shall be construed as a restriction running with the land and shall be binding upon any person to whom title to the Premises is transferred." In the following provision, the Deed of Easement makes clear that the development rights in the property are transferred to New Jersey:

> Grantor ... further transfer[s] and conveys to Grantee all of the nonagricultural development rights and development credits appurtenant to the lands and Premises described herein. Nothing contained herein shall preclude the conveyance or retention of said rights by the Grantee as may be permitted by the laws of the State of New Jersey in the future.

_____

2. For the sake of clarity, we will hereafter refer to the State of New Jersey as the recipient of the Deed of Easement, rather than the Warren County Board of Chosen Freeholders.

Taxpayer and the Internal Revenue Service ("IRS") disagreed as to whether this conveyance was a disposition of an interest in the property for purposes of triggering the S 2032A recapture tax. Taxpayer paid the $159,823 recapture tax and filed a claim for refund with the IRS. After the IRS denied taxpayer's claim, he filed the present suit in the district court seeking a refund of the entire recapture tax.

Following the parties' cross-motions for summary judgment, the district court held for taxpayer. At issue, the court recognized, was whether the sale by taxpayer of the development easement was a disposition of an interest in property that triggered the recapture tax. In resolving this question, the district court first observed that under the applicable New Jersey statute, a development easement is considered an "equitable servitude" and not a true easement. The district court then looked to the New Jersey law of equitable servitudes and determined that New Jersey follows the minority rule that treats equitable servitudes as creating contract rights, not property rights. Based on this, the district court ruled that taxpayer did not part with a real property interest in granting the development easement to the state. Accordingly, the court held that the sale of the development easement was not a "dispos[ition] of any interest" in the farmland under S 2032A, the tax recapture provision was not triggered, and taxpayer was owed a refund of $159,823 plus statutory interest. In a subsequent decision, the court denied taxpayer's motion for attorneys' fees under 26 U.S.C. S 7430 on the ground that the government's litigation position, while incorrect, was substantially justified given that the case was one of first impression and involved complex issues of statutory interpretation.

The United States appeals from the order of the district court to award taxpayer a refund of the recapture tax, and taxpayer cross-appeals from the denial of attorneys' fees. The district court had jurisdiction pursuant to 26 U.S.C. S 7422 and 28 U.S.C. S 1346(a)(1). We have jurisdiction pursuant to 28 U.S.C. S 1291. We exercise plenary review

over the district court's grant of summary judgment. Reitz v. County of Bucks, 125 F.3d 139, 143 (3d Cir. 1997).3

II.

As a general matter, in calculating estate taxes, the value of real property included in the gross estate of a decedent is its fair market value. See 26 U.S.C. S 2031; 26 C.F.R. 20.2031-1(b). Section 2032A of the Internal Revenue Code is an exception to that general rule; it allows for certain family farms and other closely held businesses to be valued, for estate tax purposes, "according to its actual use (e.g., as a farm), rather than at its fair market value based on its highest and best use (e.g., as a housing development or a shopping mall)." Estate of Lucas v. United States, 97 F.3d 1401, 1404 (11th Cir. 1996). The statute was intended to grant relief to the heirs of family farms who might otherwise find that valuation of inherited farmland at its fair market value would result in such large estate taxes that they would be required to sell the farm in order to pay the tax. See H.R. Rep. No. 94-1380, at 21-22 (1976), reprinted in 1976 U.S.C.C.A.N. 3356, 3375-76; see also Williamson v. Commissioner, 974 F.2d 1525, 1527 (9th Cir. 1992); Estate of Sherrod v. Commissioner, 774 F.2d 1057, 1061-62 (11th Cir. 1985). By allowing this "special use" valuation, S 2032A is designed to encourage the continuation of family farms and other closely-held businesses.

An estate must satisfy many conditions to obtain the benefits of S 2032A. See Estate of Lucas, 97 F.3d at 1404-05 (reviewing conditions). Only the recapture tax requirements of S 2032A(c)(1) are at issue here. That section provides:

> If, within 10 years after the decedent's death and before the death of a qualified heir --
>
> (A) the qualified heir disposes of any interest in qualified real property (other than by a disposition to a member of his family), or

---

3. The Attorney General of the State of New Jersey has submitted an amicus curiae brief in support of the district court's decision.

> (B) the qualified heir ceases to use for the qualified use the qualified real property which was acquired (or passed) from the decedent,
>
> then, there is hereby imposed an additional estate tax.

Under this provision, a recapture tax must be paid if the qualified heir disposes of any interest in the property or fails to use the property for a qualified purpose within ten years from the decedent's date of death. As noted above, the district court held that the taxpayer did not owe the recapture tax under subsection (1)(A) of S 2032A because taxpayer's grant of a development easement to the State of New Jersey was not a "dispos[ition] of any interest" in his farmland.

The United States contends that the district court erred in holding that taxpayer did not owe the recapture tax because, under New Jersey law, a development easement purportedly gives rise to contract rights as opposed to property rights. The government argues that once the district court determined that the development easement created rights that were recognized under state law, it should have turned to federal law to determine whether the transfer of those rights was a "dispos[ition] of any interest" that triggered the recapture tax. According to the United States, whether the interest created by the Deed of Easement was labeled a "contract right" or a "real property interest" under New Jersey law is irrelevant. [4]

_____

4. The United States argues in the alternative that the district court erred in its interpretation of New Jersey law. According to the government, under New Jersey law, a development easement is regarded as a true easement, giving rise to an interest in land, not as an equitable
servitude giving rise to contract rights. It cites two principal authorities
in support of this position. First, the New Jersey statute which created the development easement granted by taxpayer specifically provides that a " `[d]evelopment easement means an interest in land, less than fee simple absolute title thereto." N.J. Stat. AnnS 4:1C–13(f). Second, in a decision involving a property tax dispute over the value of land subject to a conservation easement, the New Jersey Supreme Court stated that "[c]onservation easements of the kind here considered are easements in gross." Village of Ridgewood v. Bolger Foundation, 517 A.2d 135, 137 (N.J. 1986).

We agree with the government that the district court erred in predicating its decision on the manner in which development easements are classified under New Jersey law. It has long been recognized that the Internal Revenue Code creates "no property rights but merely attaches consequences, federally defined, to rights created under law." United States v. National Bank of Commerce, 472 U.S. 713, 722 (1985) (quoting United States v. Bess, 357 U.S. 51, 55 (1958)). In applying a federal revenue act, therefore, "state law controls in determining the nature of the legal interest which the taxpayer had in the property." National Bank of Commerce, 472 U.S. at 722. However,"the state-law consequences of that definition are of no concern to the operation of the federal tax law." Id. at 723; see also Morgan v. Commissioner, 309 U.S. 78, 81 (1940) ("[i]f it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law"); 21 West Lancaster Corp. v. Main Line Restaurant, Inc., 790 F.2d 354, 356 (3d Cir. 1986) ("[w]hile state law creates legal interests and defines their incidents, the ultimate question whether an interest thus created and defined falls within a category stated by a Federal statute requires an interpretation of that statute, which is a Federal question") (internal quotation omitted).

The point is demonstrated by National Bank of Commerce, where the issue was whether the IRS had the right to levy on a jointly-held Arkansas bank account for delinquent federal taxes owed by only one of the account holders. 472 U.S. at 715. The governing statute, 26 U.S.C. S 6321, provided that: "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or

_____

We believe that the district court's conclusion that a development easement is an equitable servitude and not a true easement under New Jersey law is questionable. Nevertheless, we need not reach that issue because, as explained infra, the district court's conclusion to base its holding on the doctrinal classification of development easements under New Jersey law was a more fundamental error.

8

personal, belonging to such person." Id. at 719. The case
hinged on whether the delinquent taxpayer's interest in the
joint account was "property" or "rights to property," within
the meaning of S 6321. Looking to Arkansas law to define
the nature of the taxpayer's interest in the property, the
Supreme Court held that because state law provided that
the delinquent taxpayer had an unrestricted right to
withdraw funds from his joint account, the account was
subject to levy by the IRS. Id. at 724. Further application of
state law in this situation, according to the Court, was
erroneous. In particular, the Court rejected the view that
Arkansas' creditors' rights law could limit the IRS' power to
levy, once it was determined that the joint account was
taxpayer's property. Id. at 727. Attributing such importance
to state law in the operation of a federal revenue act
"misconceives the role properly played by state law in
federal tax-collection matters." Id.

The rationale of National Bank of Commerce suggests that
New Jersey law is relevant here only to the extent that it
defines the development easement that taxpayer deeded to
the state. The state law consequences of that definition,
however, as well as the state's doctrinal classification of the
development easement -- be it as an easement, restrictive
covenant, equitable servitude, or anything else-- have no
bearing on the application of the recapture tax provision.
See, e.g., Helvering v. Stuart, 317 U.S. 154, 162 (1942)
("[o]nce rights are obtained by local law, whatever they may
be called, these rights are subject to the federal definition
of taxability"). Having determined that the development
easement is recognized under state law, the district court
should have turned to federal law to decide whether the
transfer of the development easement constituted a
"dispos[ition] of any interest" in taxpayer's farmland within
the meaning of S 2032A.

Taxpayer contends that the extent of the district court's
reliance on New Jersey law in determining whether the
transfer of a development easement triggers the recapture
tax is required by Treasury Regulation S 20.2032A-8(c)(2),
which provides, in part:

> An interest in property is an interest which, as of the
> date of the decedent's death, can be asserted under

applicable local law so as to affect the disposition of the specially valued property by the estate. Any person in being at the death of the decedent who has any such interest in the property, whether present or future, or vested or contingent, must enter into the agreement. . . .

26 C.F.R. S 20.2032A-8(c)(2). Taxpayer claims that this regulation sets forth a test for determining whether a particular disposition triggers the recapture tax, and dictates that local law, not federal law, controls that determination.

We disagree. Contrary to taxpayer's assertion, the plain meaning of Treasury Regulation S 20.2032A-8(c) does not purport to define the events that trigger the recapture tax. Instead, the regulation articulates who, at the time a S 2032A special use election is made, must sign the agreement to pay the recapture tax in the event that the tax becomes payable. See Estate of Lucas, 97 F.3d at 1407. Taxpayer cites no authority in support of his novel interpretation of the regulation, and we have found none. Even the district court, which agreed with taxpayer's assessment of S 2032A, concluded that the treasury regulations were "silent" on the question presented. Taxpayer's reliance on Treasury Regulation S 20.2032A-8(c)(2) is misplaced.

III.

What remains to be decided is whether taxpayer's transfer of the development easement in his farm to New Jersey constitutes a disposition of "any interest" within the meaning of S 2032A. In resolving this question, we do not have the benefit of precedent, as there are no published judicial opinions addressing this aspect of S 2032A. Nonetheless, relying on well-established principles of property law and estate taxation, we conclude that the conveyance of the development easement was a disposition of an interest in the farm.

The property laws have long referred to the metaphor that owning property is like owning a "bundle of rights." See, e.g., Loretto v. Teleprompter Manhattan CATC Corp.,

458 U.S. 419, 435 (1982); see generally Gerald Korngold, Comparing the Concepts of `Property' and `Value' in Real Estate Law and Real Property Taxation, 25 Real Est. L.J. 7, 9 (1996) (discussing the related "bundle of sticks" metaphor). Here, the real property that passed to taxpayer on the death of his father can be viewed in two portions: first, the "bundle of rights" relating to the agricultural use of the land, and second, the additional value represented by the "bundle of rights" relating to development uses of the land. Cf. Sullivan v. United States, 618 F.2d 1001, 1005 (3d Cir. 1980) (noting that "there is no theoretical obstacle to breaking up the bundle of rights that comprise a fee simple interest in property," and that when taxpayers "sever the rights incident to a fee interest . . . such interests may be treated separately for federal tax purposes").

If the special use provision of S 2032A did not exist, it is undisputed that taxpayer would have been required to pay estate taxes on the entire bundle of rights associated with the farm, including those rights related to the development of the land, when the property passed to taxpayer from his father. See 26 U.S.C. S 2033 (defining the gross estate to include "the value of all property to the extent of the interest therein of the decedent at the time of his death"). Taxpayer avoided paying estate taxes on the bundle of rights associated with the development uses of the land by electing to value the farm under the special use provision. He did so on the understanding that he would not realize the value of those rights within the ten year recapture period. In executing the Deed of Easement, however, taxpayer conveyed to New Jersey "all of the nonagricultural development rights and development credits appurtenant to the lands and premises." In exchange for these valuable development rights, taxpayer received consideration of over $1.4 million. Through this transaction, taxpayer disposed of valuable property rights that the Internal Revenue Code would have otherwise taxed when those rights were passed from taxpayer's father, but did not because of theS 2032A election. Because this disposition occurred within ten years of the decedent's death, the recapture tax was due.

Taxpayer argues that he has not disposed of any interest in the farmland because the Deed of Easement conveyed

11

"nothing to anyone." Taxpayer's Br. at 9. Taxpayer asserts that the deed imposed land-use restrictions on the property, but did not convey any property interest to New Jersey.

We are not persuaded by taxpayer's characterization of the transaction. At the core of his argument is the erroneous premise that the development easement is merely a land-use restriction, and not an interest in land. That, however, is contrary to the New Jersey Agriculture Retention Act, which defines a development easement as:

> an interest in land, less than a fee simple absolute title thereto, which enables the owner to develop the land for any nonagricultural purpose as determined by the provisions of this act . . ..

N.J. Stat. Ann S 4:1C-13(f) (emphasis added).

In addition to the statutory provision, the language of the Deed of Easement is quite clear that a sale of an interest in land has taken place. First, the Deed of Easement states that taxpayer "grants and conveys to the Grantee a development easement on the Premises . . . for and in consideration of the sum of $1,433,493.72." Second, the deed provides that taxpayer "transfer[s] and conveys to Grantee all of the nonagricultural development rights and development credits appurtenant to the lands and Premises described herein."5 Third, the deed references the Agriculture Retention Act, which clearly contemplates the sale or conveyance of development easements. See N.J. Stat. Ann S 4:1C-24(a)(2) ("[a]ny landowner . . . may enter into an agreement to convey a development easement on the land to the board"); N.J. Stat. Ann S 4:1C-31(a) ("[a]ny landowner applying to the board to sell a development easement . . . shall offer to sell the development easement at a price which, in the opinion of the landowner,

_____

5. As evidence that he did not sell anything to New Jersey, taxpayer points to one passage in the Deed of Easement that states that the document should be construed as a "restriction running with the land." Whatever the meaning of that provision, and we believe it is far from clear, it certainly does not contradict the statement in the Deed of Easement that taxpayer has conveyed to New Jersey all of the development rights associated with the property.

12

represents a fair value of the development potential of the land for nonagricultural purposes"). Accordingly, taxpayer's effort to recast the Deed of Easement as something other than a sale or conveyance of an interest in land is unavailing.

Taxpayer also asserts that the fact that he is entitled to sell the farmland without the permission of the State of New Jersey demonstrates that he did not dispose of any interest in the farmland. We disagree. While the Deed of Easement does provide that "the land and its buildings which are affected may be sold [by taxpayer] .. . for continued agricultural use," it is also clear that taxpayer, as a consequence of the transaction, is no longer in a position to sell the nonagricultural rights associated with the farm. Those rights now belong to New Jersey. As stated in the deed:

> Nothing contained herein shall preclude the conveyance or retention of said [development] rights by the Grantee as may be permitted by the laws of the State of New Jersey in the future.

Thus, anyone interested in using the property for development purposes must purchase those rights from the State. While taxpayer may still sell the agricultural rights associated with the farm, that does not alter the fact that taxpayer conveyed an interest in the property by execution of the Deed of Easement.6

Taxpayer contends the Tax Court's decision in Williamson v. Commissioner, 93 T.C. 242 (1989), aff'd, 974 F.2d 1525 (9th Cir. 1992), counsels that we affirm the district court.

_____

6. In arguing that New Jersey purchased nothing by operation of the Deed of Easement, taxpayer makes much of the fact that under existing New Jersey law, the State may not sell a development easement. See N.J. Stat. Ann S 4:1C–32(a) ("[n]o development easement purchased pursuant to the provisions of this act shall be sold, given, transferred or otherwise
conveyed in any manner"). That the statute currently precludes a transfer of a development easement by the State, however, does not mean that New Jersey does not own valuable rights capable of transfer; to the contrary, the statutory provision supports the conclusion that a development easement is an interest in land that could, but for the statute, be separately purchased and sold.

13

In that case, taxpayer Williamson entered into a cash lease of his farmland -- which had previously been the subject of a S 2032A election -- with his nephew. The Commissioner contended that the leasing of the property triggered the recapture tax because a cash lease was not a "qualified use" of the property under S 2032A(c)(1)(B). As an alternative argument, Williamson maintained that no recapture tax should be imposed because a lease was a "disposition" of the farmland, and a disposition of the farmland to a family member does not trigger the recapture tax under S 2032A(c)(1)(A). The court rejected that view, noting that Williamson did not dispose of any interest in the farm by entering into a lease with his nephew. Id. at 251. Taxpayer asserts that this statement in Williamson supports his position that it is inappropriate to read S 2032A(c)(1)(A) literally, and that we should hold that a development easement is not the type of interest that Congress had in mind when they stated that the recapture tax was payable if a taxpayer "dispose[d] of any interest" in his qualified real property.

Contrary to taxpayer's characterization of the case, the court in Williamson did not hold, and did not even suggest, that S 2032(c)(1)(A)'s "any interest" provision should not be interpreted literally. Instead, the court held that a lease was not a disposition of an interest in the farmland because a disposition "ordinarily refers to a sale, exchange, or gift." Id. at 252. Here, in contrast, there is no question that taxpayer's grant of a development easement was a permanent sale. Thus, Williamson is readily distinguishable from the instant case. Indeed, in affirming the Tax Court's decision, the Court of Appeals for the Ninth Circuit recognized as much by drawing a distinction between a temporary lease, which the court agreed did not qualify as a disposition, and the conveyance of an easement, which the court recognized would constitute a disposition because of its permanency. See Williamson, 974 F.2d at 1534.

We also reject taxpayer's contention that the legislative history of S 2032A compels the conclusion that the recapture tax should not be triggered by the grant of a development easement. Initially, we note that scrutiny of the statute's legislative history is not necessary in this case

14

because we have determined, based on the plain meaning of the statute, informed by our understanding of relevant legal principles, that taxpayer's grant of a development easement was a disposition of an interest in his farm. See, e.g., Ford v. Schering-Plough Corp., 145 F.3d 601, 613 (3d Cir. 1998) (no cause to analyze statute's legislative history when its plain meaning is clear). Nevertheless, even if we were to consider the legislative history of S 2032A, we would reach the same conclusion. The relevant portion of the House Committee Report, addressing the need for the recapture tax provision, states:

> [y]our committee recognizes that it would be a windfall to the beneficiaries of an estate to allow real property used for farming or closely held business purposes to be valued for estate tax purposes at its farm or business value unless the beneficiaries continue to use the property for farm or business purposes, at least for a reasonable period of time after the decedent's death. Also, your committee believes that it would be inequitable to discount speculative values if the heirs of the decedent realize these speculative values by selling the property within a short time after the decedent's death. For these reasons, your committee has provided for special use valuation in situations involving real property used in farming or in certain other trades or businesses, but has further provided for recapture of the estate tax benefit where the land is prematurely sold or is converted to nonqualifying uses.

H.R. Rep. No. 94-1380 at 22 (1976), reprinted in 1976 U.S.C.C.A.N. 3356, 3376 (emphasis added).

By including the recapture tax provision in S 2032A, it appears that Congress intended to prevent a taxpayer from obtaining a special use valuation on property for estate tax purposes, and then, by sale or other disposition within a relatively short period, obtaining the value of the property's highest and best use. In other words, Congress sought to prevent the exact result that taxpayer urges here: an heir to a family farm avoiding estate taxes on the nonagricultural

15

uses of the property and shortly thereafter reaping the monetary benefits of those same nonagricultural uses.7

Both taxpayer and the Attorney General of New Jersey as amicus curiae argue that the legislative history of S 2032A(c)(1)(A) indicates that Congress intended the recapture tax to be triggered only by the sale of the entire property, not a portion thereof. We do not read the relevant committee reports to suggest such a result. See , e.g., H.R. Rep. No. 94-1380 at 26 (1976), reprinted in 1976 U.S.C.C.A.N. 3356, 3380 ("Disposition . . . of a portion of an interest [in the qualified real property] may result in a full or partial recapture."). In any event, taxpayer's interpretation is foreclosed by the actual statutory language chosen by Congress, which provides that a recapture tax is owed if a taxpayer "disposes of any interest in the qualified real property." 26 U.S.C. S 2032A(c)(1)(A) (emphasis added). If Congress meant for the recapture tax to be triggered only by the sale of an entire fee simple interest, we must presume that it would have enacted language to that effect. See Connecticut National Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.").8

_____

7. We are aware that as part of the Taxpayer's Relief Act of 1997, S 508, Pub. L. No. 105-34, 111 Stat. 788, 860, Congress amended S 2032A to provide that a charitable contribution of a conservation easement does not trigger the recapture tax. See 26 U.S.C.S 2032A(c)(8) (West Supp. 1998). The amendment does not affect the instant case for two reasons: first, the Deed of Easement at issue here was executed well before December 31, 1997, the effective date of the amendment, see S 508(e)(2), Pub. L. No. 105-34, 111 Stat. 788, 860; second, the amendment pertains to a charitable contribution of a conservation easement, but does not apply to an individual such as taxpayer, who sells a conservation easement for valuable consideration.

8. For similar reasons, we cannot accept the Attorney General's argument that, even if taxpayer disposed of an interest in his property, we should still conclude that taxpayer does not owe the recapture tax because the purpose of S 2032A and the Agriculture Retention Act is to preserve farmland, and taxpayer's property is still being used as a farm. The Attorney General predicts that if we a hold that a recapture tax is due under the circumstances herein, farmers will be discouraged from

16

IV.

The district court erred in holding that the grant of a
development easement to the State of New Jersey by
taxpayer did not constitute the disposition of any interest in
property under 26 U.S.C. S 2032A(c)(1)(A). Accordingly, we
will reverse the October 30, 1997 order of the district court
and remand with instructions to grant summary judgment
in favor of the United States. As taxpayer is no longer the
prevailing party, we will dismiss as moot his cross-appeal
challenging the district court's refusal to award attorneys'
fees.

Each party to bear its own costs.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

selling development easements to New Jersey, which, in turn, will
undermine the State's effort to conserve farmland. Essentially, the State
asks us to disregard the express terms of a federal statute in order to
further its policy objectives. This we are not free to do. See Estate of
Applebaum v. Commissioner, 724 F.2d 375, 377 (3d Cir. 1983) (plain
language of a statute cannot be ignored for policy reasons).

17