Charles **FRANCISCO** and Cecilia Francisco

v.

**UNITED STATES of America,**
**Internal Revenue Service.**

No. Civ.A. 98–2245.

United States District Court,
E.D. Pennsylvania.

June 22, 1999.

Jeffrey Cooper, Mesirov Gelman Jaffe, Cramer & Jamieson, Phila, PA, for plaintiff.

Angelo A. Frattarelli, AUSA, U.S. Dept of Justice, Trial Attorneys, Tax Div., Washington, DC, for defendant.

### MEMORANDUM

ANITA B. BRODY, District Judge.

This case presents two major questions: (1) in general, are delay damages, awarded by Pennsylvania courts to certain prevailing plaintiffs in personal injury cases, excludable from gross income under section 104(a)(2) of the Internal Revenue Code, and as a corollary, are they excludable from income when awarded as part of a settlement reached subsequent to a jury verdict; and (2) if not excludable, did the IRS properly apportion the amount plaintiffs received to settle their case between its taxable and non-taxable components. The facts necessary to resolve these legal questions are not in dispute, and the parties have filed cross-motions for summary judgment. As explained below, I conclude that delay damages are not excludable from gross income; however, the method the IRS used to determine the taxable portion of the Francisco's settlement may not have been appropriate and will require further briefing to address this issue.

### I. BACKGROUND

█ Charles Francisco was injured in an automobile accident in February, 1983. He and his wife, Cecilia Francisco, brought suit against Ford Motor Co., Eaton Corp., and Hertz–Penske Truck Leasing, Inc. for damages resulting from that accident. In March, 1994, a Pennsylvania jury awarded $1,810,000 to Mr. Francisco.[1] Pursuant to Pa.R.Civ.P. 238, delay damages in the amount of $1,615,662 were added to the jury verdict, bringing the total award to $3,425,662. Defendants Ford and Eaton moved for a new trial, which was denied. Defendants then appealed to the Superior Court, which affirmed the verdict on July 27, 1995. Next, Defendants petitioned for allocatur to the Pennsylvania Supreme Court, and on January 19, 1996, while the petition for allocatur was pending, the Franciscos agreed to settle their claims for $3,400,000. After deducting attorney's fees and costs, the Franciscos received $2,247,727.

The Franciscos did not report any of the net settlement proceeds on their 1996 federal income tax return. After their return was selected for audit and following that audit, the IRS notified the Franciscos that it proposed to asses a tax deficiency of $402,646, based on the settlement proceeds. The IRS, concluding that delay damages represent taxable interest income, determined that $1,033,954 of the net settlement amount was taxable by using the following formula:

$$\frac{\text{Statutory Delay Damages in Original Award}\ (\$1,615,662)}{(\$3,526,462)\ \text{Total Award}} = 46\% \times (\$2,247,727)\ \text{Net Settlement Amount}$$

Plaintiffs paid $429,301.49 in taxes and interest on January 5, 1998, and then filed a claim for a refund of that whole amount, plus interest. The IRS denied the claim for refund on March 17, 1998. Plaintiff's subsequently filed this suit.

### II. DISCUSSION

█ The crux of this case is the tension between two provisions of the Internal Revenue Code, sections 61(a) and 104(a)(2). Section 61(a) provides that, "Except as otherwise provided in this sub-

1. Mrs. Francisco was awarded $100,000 on her claim for loss of consortium. Under Pennsylvania law, delay damages are not available on claims for loss of consortium. *Anchorstar v. Mack Trucks, Inc.,* 533 Pa. 177, 620 A.2d 1120 (1993).

title, gross income means all income from whatever source derived." The Supreme Court has emphasized that § 61(a) is to be interpreted broadly. *See Commissioner v. Schleier,* 515 U.S. 323, 327, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995); *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 429, 75 S.Ct. 473, 99 L.Ed. 483 (1955); *Commissioner v. Jacobson,* 336 U.S. 28, 49, 69 S.Ct. 358, 93 L.Ed. 477 (1949). Unless the taxpayer can demonstrate that a specific exclusion applies, any clearly realized accession to wealth is considered income. *Rickel v. Commissioner,* 900 F.2d 655, 657–58 (3d Cir.1990) (citing *Glenshaw Glass,* 348 U.S. at 429–30, 75 S.Ct. 473). Section 104(a)(2) is such a specific exclusion. At the time the Franciscos received the settlement proceeds in this case, § 104(a)(2) excluded from gross income "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injury or sickness." [2] A corollary to the rule that § 61(a) is interpreted broadly is that exclusions from income, including § 104(a)(2), are construed narrowly. *See Schleier,* 515 U.S. at 328, 115 S.Ct. 2159; *Jacobson,* 336 U.S. at 49, 69 S.Ct. 358.

### A. Are Delay Damages Excludable from Income Under I.R.C. § 104(a)(2)?

Two criteria must be satisfied before an amount qualifies for exclusion from income under § 104(a)(2). First, the amount has to be received through a cause of action in the nature of a tort. *United States v. Burke,* 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992). It is undisputed that the Francisco's original suit was in the nature of a tort. The second criterion is that the amount received must represent "damages [ ] received 'on account of personal injuries or sickness.'" *Schleier,* 515 U.S. at 336, 115 S.Ct. 2159. The IRS

argues that delay damages, awarded under Pa.R.Civ.P. 238, are not damages received "on account of personal injury or sickness," as the Court has limited that term, but rather are a form of pre-judgment interest that falls outside the scope of § 104(a)(2), and are taxable as interest income. I.R.C. § 61(a)(4). Plaintiffs contend that delay damages fall within the language of I.R.C. § 104(a)(2). They argue that although delay damages are in the form of interest, they are not interest in substance. Rather, they are a distinct form of damages intended to make the personal injury victim whole.

A federal court looks to state law to determine the nature and extent of the property interest in dispute, but the tax consequences of that property interest are determined by reference to federal law. *Helvering v. Stuart,* 317 U.S. 154, 161, 63 S.Ct. 140, 87 L.Ed. 154 (1942); *Estate of Gibbs v. United States,* 161 F.3d 242, 246 (3d.Cir.1998) (" 'If it is found in a given case that an interest or right created by local law was the object intended to be taxed, the federal law must prevail no matter what name is given to the interest or right by state law.' ") (quoting *Morgan v. Commissioner,* 309 U.S. 78, 81, 60 S.Ct. 424, 84 L.Ed. 585 (1940)). Thus, I look first to Pennsylvania law to determine the nature of delay damages before examining whether they constitute taxable income.

#### 1. Nature of Delay Damages Under Pennsylvania Law

Historically, pre-judgment interest was unavailable to plaintiffs in personal injury cases. *See, e.g., Marrazzo v. Scranton Nehi Bottling Co.,* 263 A.2d 336, 337 (1970) ("[I]t is now the settled law in this Commonwealth that interest, as such, is not allowed in tort actions when the damages sought to be recovered are unliquidat-

---

**2.** 26 U.S.C.A. § 104(a)(2) (West 1988). Section 104(a)(2) was amended in 1996 to read: "the amount of any damages *(other than punitive damages)* received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal *physical* injuries or *physical* sickness." Small Business Job Protection Act of 1996, Pub.L. No. 104–188, § 1605, 110 Stat. 1755 (1996) (amendments in italics).

ed.").[3] In 1978, the Supreme Court of Pennsylvania promulgated Pa.R.Civ.P. 238, which authorizes a court to award damages for delay to victorious plaintiffs in personal injury, wrongful death, and property damage actions.[4] For cases filed prior to August 1, 1989, the court computes these "delay damages" based on the prime interest rate plus one percent, running from either the date the plaintiff filed the complaint or one year after the accrual of the cause of action, whichever is later, until the date of the award, verdict, or decision.[5] However, delay damages do not accrue during the time: (1) after a defendant makes an offer of settlement, (if that offer is open for either ninety days or until the start of trial, whichever is earlier) and the plaintiff does not recover damages more than 125% of the amount of the settlement offer; or (2) in which plaintiff causes the delay of the trial. Pa.R.Civ.P. 238(b).

The Pennsylvania Supreme Court identified two purposes behind Rule 238. The first was the "primary desire to encourage pretrial settlement" in order to clear the courts' dockets. *Laudenberger v. Port Auth. of Allegheny County*, 496 Pa. 52, 436 A.2d 147, 151 (1981) ("[T]he basic aim of this rule is to alleviate delay in the disposition of cases, thereby lessening congestion in the courts."). A secondary purpose was to "compensate the plaintiff for the inability to utilize funds rightfully due him." *Id.* The court distinguished delay damages from automatic pre-judgment interest rules in other states, by pointing out that, in Pennsylvania, plaintiffs are unable to recover delay damages if they reject a reasonable settlement offer. The court contrasted Rule 238 to New Jersey's pre-judgment interest regime. Under New Jersey law, a successful plaintiff could recover pre-judgment interest whether or not a reasonable settlement offer has been extended. *Id.* The court justified imposition of delay damages by procedural rule, rather than through legislative enactment, by emphasizing this difference and its relationship to the purpose behind imposing

3. In *Marrazzo*, the court recognized that there are some cases sounding in tort where damages in the nature of interest were available. This exception was limited to cases, such as the destruction of property, where the "compensation can be measured by the market value or other definite standard" and the plaintiff would not "be fully compensated unless he received not only the value of his property, but receive it, as nearly as may be, as of the date of his loss." 263 A.2d at 337 (quoting *Richards v. Citizens Natural Gas Co.*, 130 Pa. 37, 18 A. 600 (1889)).

4. The relevant sections of Rule 238 read as follows:

(a)(1) At the request of a plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury, in the decision of the court in a nonjury trial or in the award of arbitrators ... and shall become part of the verdict, decision or award.
. . . .
(3) Damages for delay shall be calculated at the rate equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus one percent, not compounded.
. . . .
(b) The period of time for which damages for delay shall be calculated ... shall exclude the period of time, if any,
(1) after which the defendant makes a written offer of
(i) settlement in a specified sum with prompt cash payment to plaintiff, or
(ii) a structured settlement underwritten by a financially responsible entity,
and continued that offer in effect for at least ninety days or until commencement of the trial, whichever first occurs, which offer was not accepted and the plaintiff did not recover by award, verdict or decision, exclusive of damages for delay, more that 125 percent of either the specified sum or the actual cost of the structured settlement plus any cash payment to the plaintiff; or
(2) during which the plaintiff caused delay of the trial.

5. Pa.R.Civ.P. 238(a)(2)(ii). In cases filed after August 1, 1989, the period of time for which delay damages are calculated begins "one year after the date original process was first served in the action." Pa.R.Civ.P. 238(a)(2)(ii).

delay damages—encouraging settlements and clearing the dockets. *Id.*

▪ To the extent that delay damages do have a secondary, compensatory purpose,[6] they appear to serve the same function as pre-judgment interest—compensating plaintiffs for the lost time value of money—and both the Pennsylvania Supreme Court and the Third Circuit have equated delay damages with pre-judgment interest. *See Willet v. Pennsylvania Med. Catastrophe Fund,* 549 Pa. 613, 702 A.2d 850, 854 n. 7 (1998) ("Delay damages are a form of pre-judgment interest designed to compensate a prevailing plaintiff for the loss of funds that the jury verdict reflects were owed to plaintiff if the funds were promptly received."); *Costa v. Lauderdale Beach Hotel,* 534 Pa. 154, 626 A.2d 566, 569 (1993) ("Delay damages merely compensate a plaintiff for 'the money that he would have earned on his award if he had promptly received it.'") (quoting *Laudenberger,* 436 A.2d at 154 (1981)); *Schrock v. Albert Einstein Med. Ctr.,* 527 Pa. 191, 589 A.2d 1103, 1105 n. 3 (1991) ("Under former Rule 238, interest was calculated at 10% per annum.... Under revised Rule 238, interest is calculated at the rate equal to the prime rate ... plus one percent...."); *Fauber v. KEM Transp. & Equip. Co.,* 876 F.2d 327 (3d Cir.1989) ("Rule 238 in all its versions, permits a successful tort plaintiff to recover pre-judgment interest on his claim unless the defendant can show the plaintiff himself improperly caused the delay.").

▪ In summary, under Pennsylvania law, delay damages are a procedural tool. They function by preventing a defendant from delaying litigation and thereby earning interest on money "owed" to the plaintiff.[7] In their secondary, compensatory role, they are the functional equivalent of pre-judgment interest. Given that characterization, I now examine whether delay damages are awarded "on account of personal injury."

### 2. Are delay damages received "on account of personal injuries"?

The Franciscos make two arguments in support of their position that delay damages are compensation for personal injury and thus excludable under § 104(a)(2). First, they point out that delay damages are available only to victorious plaintiffs in actions involving bodily injury, death, or property damage. Second, they point to language in Pennsylvania cases stating that delay damages are an element of relief intended to make a successful plaintiff whole. *See supra,* note 6. For the reasons explained below, both arguments are unconvincing.

#### a. *O'Gilvie* and *Schleier*

The latest Supreme Court analysis of the interplay between sections 61(a) and 104(a)(2) was in *O'Gilvie v. United States,* 519 U.S. 79, 117 S.Ct. 452, 136 L.Ed.2d 454 (1996). In that case, the question faced by the court was whether punitive damages awarded in a tort suit were excludable

**6.** The Franciscos point to language in the *Laudenberger* opinion to support their claim that delay damages should be characterized as compensatory damages and not as interest. They point to the court's statement that, "Although the award for delay of time may be 'in the nature of interest' in reality it is merely an extension of the compensatory damages necessary to make a plaintiff whole." 436 A.2d at 154 (quoting *Marrazzo,* 263 A.2d at 337); *cf. Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 236 (3d Cir.1997) ("Along with interest, costs and delay damages, the object of an attorney fee award is to make the successful plaintiff completely whole."). The label attached to delay damages is not the de-

ciding factor, however. *See Commissioner v. Court Holding Co.,* 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981 (1945); ("The incidence of taxation depends upon the substance of a transaction."); *see also, Estate of Gibbs,* 161 F.3d at 246. As discussed more fully below, the appropriate inquiry is whether they are "awarded by reason of, or because of, the personal injur[y]." *O'Gilvie,* 117 S.Ct. at 454–55.

**7.** See *Costa,* 626 A.2d at 570 ("Delay damages ... do not permit a defendant to profit from holding money that belongs to the plaintiff.")

from income. In holding that the punitive damage award was taxable income, the Court rejected the petitioners' argument that all damages awarded in a personal injury suit fall under § 104(a)(2), and held that only those damages that are "awarded by reason of, or because of, the personal injur[y]," are excludable. *Id.* at 454–55 (agreeing with the Government's interpretation of § 104(a)(2)). *O'Gilvie* reaffirmed the holding in *Commissioner v. Schleier*, 515 U.S. 323, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995), that each element of damages must be examined individually to determine whether it was awarded because of the personal injury. 117 S.Ct. at 455; *see also Rozpad v. Commissioner*, 154 F.3d 1, 5–6 (1st Cir.1998); *Brabson v. United States*, 73 F.3d 1040, 1043 (10th·Cir.1996).

In *Schleier*, the Court discussed a hypothetical settlement arising from an automobile accident in which the plaintiff had requested damages for (a) medical expenses, (b) lost wages, and (c) pain, suffering, and emotional distress. The entire settlement amount would be excludable under § 104(a)(2), the Court reasoned, because each portion of the settlement represent damages received "on account of personal injury." *Schleier*, 515 U.S. at 329, 115 S.Ct. 2159. Applying the *Schleier* test to punitive damages, the Court in *O'Gilvie* reasoned that punitive damages, not being designed to compensate victims, but rather to punish tortfeasors, are not awarded on account of the injury and do not fall under § 104(a)(2). 117 S.Ct. at 455.

b. Delay Damages as a Procedural Tool

■ Employing the reasoning in *Schleier* and *O'Gilvie* to delay damages, one needs to look to the purposes behind imposing them on defendants. To the extent that delay damages are primarily a procedural tool designed to encourage settlement, they are not damages received on account of personal injury. They are imposed to affect the behavior of the defendant with regard to the conduct of litiga-

tion and are unrelated to plaintiff's injury. The fact that delay damages are unavailable when the delay is caused by the plaintiff, Pa.R.Civ.P. 238(b)(2), reinforces my conclusion that delay damages are awarded primarily to affect the course of litigation, and not to compensate for a plaintiff's underlying injury.

Returning to the Franciscos' arguments, the fact that delay damages are available in property damage cases contradicts their .claim that, "delay damages are available *only* because an injured party suffered bodily injury." Pls.' Mot.S.J. at 10 (emphasis in original). Also, given that delay damages were designed to reduce court congestion, the fact that they are limited to cases of bodily injury, death, and property damage does not translate into a conclusion that they are compensation for personal injury. For example, in *Wainauskis v. Howard Johnson Co.*, 339 Pa.Super. 266, 488 A.2d 1117 (1985), the court held that delay damages are not available on claims for the personal injury tort of malicious prosecution. The concurring opinion noted:

> The primary purpose of Rule 238 is to encourage pre-trial settlement of civil actions for bodily injury, death or property damages [sic] in order to alleviate the judicial congestion and delay caused by these types of actions. I believe that the number of malicious prosecution actions is so small relative to the number of actions for bodily injury … death or property damage that I do not believe they contribute significantly to judicial congestion and delay.

*Id.* at 1125 (Brosky, J., concurring). Furthermore, damages for delay have been a traditional, substantive remedy available to plaintiffs in cases outside the scope of Rule 238, where the damages are liquidated or the compensation can ˙ be "measured by the market value or other definite standard." *Marrazzo v. Scranton Nehi Bottling Co.*, 263 A.2d 336, 337 (1970). This undercuts plaintiffs' argu-

ment that damages for delay are uniquely related to personal injury claims.

### c. Compensatory Aspect of Delay Damages

To the extent that delay damages do have a compensatory purpose and make the successful tort plaintiff whole, they compensate for the lost time value of money, and are the functional equivalent of interest. Neither the Supreme Court nor the Third Circuit has addressed whether pre-judgment interest added to a personal injury verdict is excludable under § 104(a)(2). The Tax Court first addressed this issue in *Kovacs v. Commissioner*, 100 T.C. 124, 1993 WL 46512 (1993), *aff'd*, 25 F.3d 1048 (6th Cir.) (mem.), *cert. denied*, 513 U.S. 963, 115 S.Ct. 424, 130 L.Ed.2d 338 (1994), and has consistently held that pre-judgment interest is taxable, even in personal injury suits. Although the Sixth Circuit's affirmance of *Kovacs* was in an unpublished opinion, two other circuits have addressed this issue at length, see *Rozpad v. Commissioner*, 154 F.3d 1 (1st Cir.1998) and *Brabson v. United States*, 73 F.3d 1040 (10th Cir.1996), and both held that pre-judgment interest is not covered by § 104(a)(2). Thus, the three circuits that have faced this issue have been unanimous in concluding that pre-judgment interest is taxable as income.[8]

In other tax situations, interest is taxed as ordinary income, even if the recovery in the underlying suit is taxed differently or is not taxed at all. *See, e.g., Kieselbach v. Commissioner*, 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358 (1943) (where payment in a takings case was made several years after condemnation, the amount over the value of the property at time of condemnation was deemed interest, and taxable as ordinary income, rather than as capital gain); *United States v. Folckemer*, 307 F.2d 171 (5th Cir.1962) (interest received by beneficiary from the estate of a decedent, due to delay in payment of the bequest, is included in gross income and is not treated as part of the bequest); *Wolf v. Commissioner*, 84 F.2d 390 (3rd Cir.1936) (interest paid to a legatee, running from date of death of testator, is taxable as interest and was not excludable under statute that provided "the value of property acquired by gift, bequest, devise or inheritance" is to be excluded from gross income); *Wheeler v. Commissioner*, 58 T.C. 459, 1972 WL 2577 (1972) ("[A]ny portion of a judgment which compensates a taxpayer for the lost use of his money substitutes for interest and is taxed as ordinary income.")

Moreover, post-judgment interest on personal injury awards has traditionally been included in income. *See Riddle v. Commissioner*, 27 B.T.A. 1339 (1933); *see also Aames v. Commissioner*, 94 T.C. 189, 192, 1990 WL 17276 (1990) ("Interest awarded in a judgment is generally considered ordinary income, regardless of how the judgment itself is taxed."). Plaintiffs have not offered, and I have not discovered, a convincing rationale for treating the tax consequences of pre- and post-judgment interest differently in this case.[9] Both forms of interest compensate for the lost time value of money. *See Gore, Inc. v. Glickman*, 137 F.3d 863, 868 (5th Cir.1998) ("Prejudgment interest, like any other interest, is to compensate one for the time value of money."); *Motion Picture Ass'n of Am., Inc. v. Oman*, 969 F.2d 1154, 1157

---

8. The courts in *Kovacs, Rozpad* and *Brabson* all dealt with statutory, mandatory pre-judgment interest regimes, and plaintiffs seek to distinguish those cases from this case, noting that Rule 238 damages are fault-based and are not imposed automatically. As explained above, the distinction plaintiffs attempt to draw weaken their argument. The fault element encapsulated in Rule 238 emphasizes its procedural, rather than compensatory nature.

9. There are potential administrative reasons, absent in this case, for treating pre- and post-judgment interest differently. For example, a determination of what portion of a settlement represents pre-judgment interest would be very difficult when a case settles prior to a verdict, or after a verdict has been reversed on appeal.

(D.C.Cir.1992) ("[I]interest compensates for the lost time value of money, and thus is often necessary for full compensation."); *Ambromovage v. United Mine Workers of America,* 726 F.2d 972, 981 (3rd Cir.1984) ("Interest represents the time value of money. . . . It compensates the plaintiff for the delays inherent in litigation. Under the law applicable to this case, the right to interest does not arise 'from the breach itself."). Given that interest has consistently been taxed as ordinary income, plaintiffs must offer a convincing reason why interest received in connection with a personal injury should be excluded from gross income.

Plaintiffs argue that the history of § 104(a)(2) supports their claim. First they argue that "the intent of excluding personal injury damages from gross income was based on a 'conversion of capital assets' theory." Pls.' Mot.S.J. at 13; *cf.* *O'Gilvie,* 117 S.Ct. at 455–56 (discussing the policy behind § 104(a)(2) as a restoration of lost capital.) From this base, they argue that delay damages, being designed to compensate for deprivation of capital assets, must be excluded from income. *See* Pls.' Mot.S.J. at 13. This argument is unpersuasive. Assuming that the damages awarded by the jury do represent lost "human capital," delay damages awarded by the court represent interest on that lost "human capital," rather than the lost capital itself. As noted above, interest is taxed as interest, regardless of how the underlying amount (capital) is taxed. *Kieselbach v. Commissioner,* 317 U.S. 399, 63 S.Ct. 303, 87 L.Ed. 358 (1943)

10. The 1996 amendments to § 104(a)(2) were prospective, and are inapplicable in this case.

11. Congress was aware of recent court treatment of § 104(a)(2) when it amended the section in 1996. "Courts presently differ as to whether the exclusion applies to punitive damages received in connection with a case involving a physical injury or physical sickness. . . . Courts have interpreted the exclusion from gross income of damages received on account of personal injury broadly in some cases to cover awards for personal injury that do not relate to a physical injury or sick-

In support of their argument, plaintiffs also point to language in a 1996 Congressional report accompanying amendments to § 104(a)(2).[10] "If an action has its origins in a physical injury or physical sickness, then all damages (other than punitive damages) that flow therefrom are treated as payment received on account of physical injury or physical sickness, whether or not the recipient of the damages is the injured party." H.R.Rep. No. 104–586, at 144 (1996). The 1996 amendments limited § 104(a)(2)'s scope to cases of physical injury and physical sickness. The quote cited by plaintiffs does not speak to whether Congress intended pre-judgment interest to fall within § 104(a)(2). Rather it appears to clarify a different point: that if the origin of the dispute is a physical injury or physical sickness, then certain damages that might not be directly related to the physical injury, such as a spouse's loss of consortium claim, are still excludable under § 104(a)(2). It is relevant, although not controlling, that *Kovacs* and *Brabson* had been decided prior to the 1996 amendments, and Congress chose not to specify that pre-judgment interest is excludable from income.[11] "Generally speaking, the doctrine of legislative reenactment assumes that when Congress reenacts legislation, it incorporates existing administrative and judicial interpretations of the statute into its reenactment." *Dutton v. Wolpoff & Abramson,* 5 F.3d 649, 655 (3d Cir.1993) (citing *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978)).

ness. . . . The Supreme Court recently held that damages received based on a claim under the Age Discrimination in Employment Act could not be excluded from income." H.R.Rep. No. 104–586, at 142–143. The report specifically noted the Tax Court's decision in *Bagley v. Commissioner,* 105 T.C. No. 27, 1995 WL 730447 (1995), which had held that if punitive damages were not of a compensatory nature, they were not excludable from income, regardless of whether the underlying claim involved physical injury or sickness. *Id.*

■ Given: (1) that pre-judgment interest was traditionally unavailable in personal injury suits; (2) the absence of any clear evidence that Congress intended such interest to fall within the exclusion provided by § 104(a)(2); (3) the traditional tax treatment of interest as ordinary income; and (4) the canon of construction that exclusions from income are to be construed narrowly, I conclude that pre-judgment interest, in the form of delay damages, is not excludable from gross income under § 104(a)(2).[12]

### B. Did the IRS properly calculate the amount of the settlement that should be attributed to the award of delay damages?

The IRS determined that 46% of the net proceeds of the settlement represented taxable delay damages. That determination was made by applying the ratio of delay damage to damages in the Franciscos' original award to the settlement proceeds. Plaintiffs argue that there was no factual basis for the determination; that it was mere assumption and guesswork. They state that the tax consequences of the settlement were not considered during settlement negotiations, and point out that the settlement agreement does not apportion any amount to delay damages. They do state, however, and that interest considerations were "considered for the purpose of calculating the 'dollar exposure around which negotiations were centered.'" (P's Mot.S.J. at 29). The IRS counters that it must look behind the language of the settlement agreement, to determine the nature of what the settlement represents. It argues that the settlement amount includes a component representing delay damages, because, if it did not, the parties would have settled for amount equal to or less than the original $1.8 million verdict. There are two First Circuit cases which uphold the apportionment method used by

IRS in this case, *Rozpad* and *Delaney v. Commissioner*, 99 F.3d 20 (1st Cir.1996).

■ The courts in *Delaney* and *Rozpad* faced situations similar to the one at issue here. In both cases, the taxpayers had won jury verdicts in personal injury cases, had been awarded pre-judgement interest on those verdicts, and had settled their claims while their cases were pending on appeal. In neither case did the settlement agreement specify that any portion of the settlement amount was attributable to pre-judgment interest. The IRS concluded that a portion of the settlement proceeds represented taxable pre-judgment interest, determined the taxable portion of the settlement using the same ratio used in the Franciscos' case before me now. The *Delaney* court noted that, although the settlement agreement did not mention pre-judgment interest, the Tax Court had to look below the surface of the agreement to inquire "whether a portion of the settlement amount represented prejudgment interest." 99 F.3d at 24; *cf. Rozpad*, 154 F.3d at 3–4 ("[W]hen the interest component of a personal injury settlement can be delineated with accuracy . . . as when there has been a jury verdict . . . a subsequent settlement that does not purport to make a different allocation is quite logically viewed as including a pro-rata share of the interest."). Courts routinely look beneath the language of settlement agreements to determine the amount which represents taxable punitive damages. *See Bagley v. Commissioner*, 121 F.3d 393 (8th Cir.1997); *Robinson v. Commissioner*, 70 F.3d 34 (5th Cir.1995); *Commissioner v. Miller*, 914 F.2d 586 (4th Cir.1990). Thus, the absence of any mention of delay damages in the settlement agreement does not preclude to IRS from looking beneath the language to the substance of the settlement. The IRS reasonably concluded that a portion of the settle-

---

12. Because of the fault-based nature of delay damages, it will be difficult to apportion a pre-verdict settlement between compensatory and delay damages. Therefore, treating delay damages as taxable income could encourage earlier settlements and further support the Pennsylvania Supreme Court's primary goal in promulgating Rule 238.

ment represented delay damages. The Franciscos were awarded $1.91 million in compensatory damages on their claims. They settled their claims in exchange for $3.4 million. If the settlement had not included an amount representing delay damages, the case would have settled for an amount equal to or less than the award for compensatory damages.

Although the conclusion that some portion of the settlement award represented taxable delay damages was reasonable, the method used by the IRS to apportion the Franciscos' settlement between its tax-free and taxable components may not sufficiently take into account Congress' intent in enacting § 104(a)(2). Congress clearly and consistently has provided that all compensation for personal injury, whether by suit or agreement, is excludable from gross income. When a case is settled for less than the original verdict plus accrued interest, and an appeal is pending, the apportionment method used by the IRS ensures that at least some part of the amount awarded as compensatory damages is taxed. This outcome is inconsistent with § 104(a)(2). The plaintiffs, however, did not argue that there was a better way to apportion the settlement; rather they contended that the IRS's position was not supported by sufficient evidence. Therefore, I decline at this juncture to decide what the correct scheme should be. *Cf. Miller*, 914 F.2d at 592 (when a jury verdict of $950,000 in compensatory and punitive damages was later settled for $900,000, the court suggested that one reasonable method of allocation would be to lop off $50,000 in punitive damages). I will grant the IRS's motion in part (on the taxability question) and will require the parties to submit briefs on the proper scheme for apportionment.

## III. CONCLUSION

Defendant's Motion for Summary Judgment will be granted in part. Delay damages, awarded under Pa.R.Civ.P. 238 are not excludable from income under I.R.C.

§ 104(a)(2). However, the apportionment scheme used by the IRS to determine what part of the Franciscos's settlement amount represented delay damages may be inconsistent with § 104(a)(2). An appropriate Order follows.

### ORDER

AND NOW, this 22nd day of June, 1999, upon consideration of the cross motions for summary judgment filed in this case, and the responses thereto, I **ORDER** that:

1. Plaintiff's Motion for Summary Judgment (docket entry 10), is **DENIED;**

2. Defendant's Motion for Summary Judgment (docket entry 9) is **GRANTED IN PART,** consistent with the memorandum accompanying this **ORDER;** and

3. On or before July 9, 1999, the parties shall submit alternative proposals for apportioning the settlement amount between compensatory and delay damages.