VILLAGE OF RIDGEWOOD, PLAINTIFF-RESPONDENT, v. THE BOLGER FOUNDATION, DEFENDANT-APPELLANT, AND ATTORNEY GENERAL, INTERVENOR-APPELLANT.

BOROUGH OF MIDLAND PARK, PLAINTIFF-RESPONDENT, v. THE BOLGER FOUNDATION, DEFENDANT-APPELLANT, AND ATTORNEY GENERAL, INTERVENOR-APPELLANT.

Argued April 28, 1986—Decided November 18, 1986.

*Glenn S. Pantel* argued the cause for appellant (*Shanley & Fisher*, attorneys; *Molly B. Cannon*, on the brief).

*Harry Z. Haushalter*, Deputy Attorney General, argued the cause for intervenor-appellant (*W. Cary Edwards*, Attorney General of New Jersey, attorney).

*Sydney V. Stoldt, Jr.*, argued the cause for respondent Village of Ridgewood (*Stoldt, Horan & Cino*, attorneys; *Cathy J. Pollak*, on the brief).

*Richard J. Allen, Jr.*, argued the cause for respondent Borough of Midland Park (*Jeffer, Hartman, Hopkinson, Vogel, Coomber & Peiffer*, attorneys).

*Douglas S. Brierley* argued the cause for *amicus curiae* New Jersey Conservation Foundation (*Schenck, Price, Smith & King*, attorneys).

The opinion of the court was delivered by,

ANTELL, P.J.A.D. (temporarily assigned).

The question presented on this appeal is whether a taxpayer may reduce, for real estate tax assessment purposes, the value of property because of a conservation easement thereon that it granted in perpetuity to a conservation foundation. In an opinion published at 6 *N.J.Tax* 391 (1984), the Tax Court held that the reduction was not allowable. With one modification the Appellate Division affirmed, 202 *N.J.Super.* 474 (1985), and we granted certification, 102 *N.J.* 343 (1985).

Defendant is a private, nonprofit corporation designated as a private foundation under the Internal Revenue Code, 26 *U.S. C.A.* § 509. The properties in question, Lot 8, Block 7 in Midland Park and Lot 9, Block 1810 in Ridgewood, have been

held by defendant since 1969 and make up a tract of approximately 2.8 acres straddling the boundary line between the two municipalities. Pursuant to an agreement dated August 15, 1979, defendant conveyed to the New Jersey Conservation Foundation ("NJCF"), a nonprofit corporation organized to foster and preserve open space, a perpetual conservation easement on the property. The easement, which did not extend to other neighboring lands also owned by defendant, was granted for the benefit of the general public and precludes defendant from removing vegetation, excavating soil, erecting structures, dumping trash, and engaging in any activity that might be detrimental to drainage, flood control, potable water, erosion control, or soil conservation. Except as specifically permitted, it prohibits any act or use "detrimental to the preservation of the Property in its natural state." Access thereto is reserved to defendant, with NJCF being permitted limited entry solely for the purpose of inspecting to insure compliance with the terms and conditions of the easement. The terms of the easement, which are binding on defendant and NJCF, their successors and assigns, further provide that in the event NJCF ceases to function with one of its primary purposes being the preservation of natural resources and open space, the easement shall be transferred and assigned to one of a number of specified conservation organizations and public bodies.

The neighborhood in which the tract is located is zoned for one family dwellings on spacious lots. During the tax years in question, 1980 and 1981, defendant's properties were appraised at their "highest and best use" for single family residences. The Ridgewood property was assessed at $21,200 for each year, and the assessment for the larger tract in Midland Park was $25,400. On the taxpayer's appeal from both assessments, the Bergen County Tax Board recognized the existence of the easement, the topography of the property, and other restrictions on the property, and reduced the assessments to a nominal value of $1000 each. The municipalities appealed these determinations to the New Jersey Tax Court. After ruling the

conservation easements nondeductible, the court restored the Ridgewood Park assessment to $21,200 and increased the Midland Park assessment to $37,600 based on its potential for single family development. With the one modification, which we will describe later, the Appellate Division affirmed substantially for the reasons expressed by the Tax Court.

Easements are of two types: easements appurtenant and easements in gross. "The distinction between the two, of course, is that an easement appurtenant requires a dominant tenement to which it is appurtenant, whereas an easement in gross belongs to its owner independently of his ownership or possession of any specific land." *Weber v. Dockray*, 2 *N.J.Super.* 492, 495 (Ch.Div.1949). An easement appurtenant is created when an owner of one parcel of property (the servient estate) gives rights regarding that property to the owner of an adjacent property (the dominant estate). It enhances the value of the dominant estate and cannot exist separate from the land itself. *American Rieter Co. v. Dinallo*, 53 *N.J.Super.* 388, 392 (App.Div.1959); 25 *Am.Jur.*2d, *Easements and Licenses*, § 11 at 425. An easement in gross, by contrast, benefits no specific parcel owned by another; it is independent of and unconnected to the ownership or possession of any particular tract. *Tewksbury Township v. Jersey Cent. Power & Light Co.*, 159 *N.J.Super.* 44, 49 (App.Div.1978), aff'd, 79 *N.J.* 398 (1979); *Restatement of Property* §§ 454, 455 (1944).

For purposes of real estate tax assessment our courts have held that the fair value of property subject to an easement appurtenant is reduced while the value of the property benefited therefrom is enhanced by the value of the easement. *Lipman v. Shriver*, 51 *N.J.Super.* 356, 360 (Law Div.1958); *Metropolitan Life Insurance Co. v. McGurk*, 15 *N.J.Misc.* 572 (Cir. Ct.1937), aff'd, 119 *N.J.L.* 517 (E. & A.1938); *Ehren Realty Co. v. Magna Charta Building & Loan Assoc.*, 120 *N.J.Eq.* 136 (Ch.1936). Conservation easements of the kind here considered are easements in gross. While there is no identifiable dominant estate that directly enjoys the benefit thereof, obviously such

an easement can enhance the value of other property in the area.

The leading authority on the allowance of a deduction from fair value of an easement in gross is *Borough of Englewood Cliffs v. Estate of Allison,* 69 *N.J.Super.* 514 (App.Div.1961). There a tract of land was held by trustees under a will for use as a public park. The trust was irrevocable and the trustees had no beneficial interest in the property. Having in mind the public benefit flowing from the easement and the lack of any private beneficial interest, the Appellate Division held that the value of the easement should be deducted from the fair value of the land. The Tax Court herein interpreted that holding to be limited to cases where the public enjoys free access to the property and not where, as here, the taxpayer retains exclusive access. We give that decision a broader reading. The pertinent language is as follows:

> We conclude that it is immaterial for assessment purposes whether the fee owner holds a title subject to a private easement for the benefit of a dominant tenement, a public easement in a dedicated and accepted street, or public rights to use and enjoy a park under a charitable trust. In each case the land has been deprived of an element of value to be subtracted from the value of the fee. Possibility of adding that element in whole or part to other property, as in the case of a dominant tenement, is not the controlling factor. The assessor's duty is to determine true value of the property being assessed; he should not include elements of value transferred to other properties or transferred to the community at large in the form of public rights. [*Id.* at 529].

■ Although not specifically enumerated therein, a conservation easement given to insure the preservation of open space is fully comparable to the easements or encroachments there considered and its recognition for tax valuation purposes is consistent with the philosophy of the foregoing statement. The public benefits flowing from such a conservation easement are beyond debate, as shown by the following legislative findings and declaration in *N.J.S.A.* 54:4–3.63:

> The Legislature hereby finds and declares that natural open space areas for public recreation and conservation purposes are rapidly diminishing; that public funds for the acquisition and maintenance of public open space should be supplemented by private individuals and conservation organizations; and that it

is therefore in the public interest to encourage the dedication of privately-owned open space to public use and enjoyment as provided for in this act.

New Jersey's policy of granting relief from property tax assessments to encourage the preservation of open space and conserving natural resources finds expression in the Farmland Assessment Act of 1964, *N.J.S.A.* 54:4–23.1 to –23.24, and the New Jersey Green Acres Land Acquisition Act of 1971, *N.J. S.A.* 13:8A–19 to –34. Moreover, effective February 5, 1980, the New Jersey Conservation Restriction and Historic Preservation Restriction Act, *N.J.S.A.* 13:8B–1 to –9, was enacted, which recognizes conservation easements granted to nonprofit organizations and specifically provides that "[t]he existence of any conservation restriction ... acquired pursuant to this act shall be considered by local assessors in establishing the full value of any lands subject to such restriction." *N.J.S.A.* 13:8B–7. Indeed, had the easement herein been conveyed scarcely six months later than it was, defendant's right to a deduction therefor would be mandated by this enactment.

■ It is clear that elements of value are surrendered by the taxpayer as an incident to transferring this assurance of preserving open space to the community at large. By giving up in perpetuity the right to do anything with the property other than keep it in its natural state, defendant has, as the County Tax Board found, seriously compromised its value as a marketable commodity. *Allison* leaves no doubt that the adverse impact of such an encumbrance on market value must be taken into account in arriving at an assessed valuation.

In construing the holding of *Estate of Allison* the Tax Court relied on *In re Appeal of Neptune Township*, 86 *N.J.Super.* 492 (App.Div.1965), where *Estate of Allison* was distinguished. In *Neptune Township* the taxpayer sought a reduction from value by reason of certain deed restrictions limiting a strip of land to use as a bathing area and prohibiting construction of improvements on the premises without the written consent of the grantor. For violation of the conditions the deed provided that title revert to the grantor. In holding that the deed

restrictions "may not be considered in fixing the market value of the property as a bathing beach club—the purpose for which it was acquired, and for which it has been used by the taxpayer for purely private purposes," *id.* at 500, the Appellate Division noted that the case differed from *Estate of Allison* in that the beach property was not dedicated to public purposes, a fact that stands in contrast also to what we have found is the manifest purpose of the easement herein. Moreover, the deed restrictions considered in *Neptune Township* could all be nullified on the "written consent of the grantor." Here, as we have said, the easement was given in perpetuity.

As we noted earlier, effective February 5, 1980, the legislature enacted the New Jersey Conservation Restriction and Historic Preservation Restriction Act, *N.J.S.A.* 13:8B–1 to –9 (Act). In general, the Act authorizes the assignment of conservation restrictions by landowners to governmental units or charitable conservancies to insure that the land governed by the restrictions will be maintained in its natural integrity. It provides that the existence of such restrictions shall be considered by local assessors in assessing land for tax purposes and directs that no such restrictions may be released without the approval of the Commissioner of Environmental Protection after a public hearing.

We observe that the Tax Court opinion commented that the Act, which became effective almost six months after the granting of the easement, required public hearings as well as the Commissioner's approval before an environmental easement acquired thereunder could be released. Implicit therein is the suggestion that because the easement was granted prior to the effective date of the Act, it had not been given "pursuant to" the Act and was therefore not subject to the requirement of a public hearing and the Commissioner's approval of its being released.

We note first the following provision of *N.J.S.A.* 13:8B–8: "Nothing in this act shall be construed to imply that any

restriction, easement, covenant, or condition which does not have the benefit of this act, on account of any provision hereof, is unenforceable." Moreover, on May 14, 1984, the defendants granted an amended conservation easement to NJCF which was recorded June 13, 1984. It specifically recited that it was a "conservation restriction ... as defined in *N.J.S.A.* 13:8B-2(b)" and that it was granted pursuant to the Act. Whatever concerns the Tax Court may have had that the easement might be released without regard to the legislated safeguards seem now to be answered.

In reaching its result, the Tax Court also expressed the belief that the easement was unenforceable because it attempted to restrict the alienability of property. Although affirming the judgment before it, the Appellate Division departed from the reasoning of the Tax Court to conclude that the easement did not violate the rule against restraints on alienation and that the restrictions of the easement were reasonable. We share that view. In other respects the determination under review is reversed and the judgment of the Bergen County Tax Board is reinstated.

*For reversal*—Chief Justice WILENTZ, Justices HANDLER, GARIBALDI and STEIN, and Judges FRITZ, ANTELL and PRESSLER (temporarily assigned)—7.

*Opposed*—None.