**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3561-16T2

HOBOKEN ASSOCIATES, LP,

    Plaintiff-Respondent,

v.

CAROLYN B. KENNY, in her
capacity as Executrix of
the Estate of HELEN KENNY,

    Defendant-Appellant.

_____

Argued May 30, 2018 – Decided November 21, 2018

Before Judges Koblitz and Suter.

On appeal from Superior Court of New Jersey, Chancery Division, Hudson County, Docket No. C-000159-15.

Russell M. Finestein argued the cause for appellant (Finestein & Malloy, LLC, attorneys; Russell M. Finestein, on the brief).

Anthony S. Bocchi argued the cause for respondent (Cullen and Dykman, LLP, attorneys; Anthony S. Bocchi, of counsel and on the brief; Steven N. Siegel, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Defendant Carolyn B. Kenny, executrix of the estate of Helen Kenny, claims that a rooftop easement was conveyed to Helen Kenny in 1984. This easement permits the party to whom it is granted the right to construct improvements on the rooftop of a parking garage located in Hoboken that is owned by the Hoboken Parking Authority (Parking Authority).[1] Plaintiff Hoboken Associates, LP filed a quiet title action, claiming it is the owner of this easement. Following cross-motions, the trial court granted summary judgment to plaintiff; defendant appeals the March 13, 2017 summary judgment order. In affirming the order after de novo review, we conclude the record amply supports the findings that the rooftop easement is appurtenant to plaintiff's adjacent office building and that plaintiff, not defendant, owns the easement because it was transferred as a result of a foreclosure to plaintiff's predecessor in title. This occurred before the transfer to Helen Kenny, which then was a legal nullity.

I.

We relate relevant facts from the cross-motions for summary judgment. In 1968, the City of Hoboken (City) entered into an agreement with a developer,

---

[1] Parking Authority is not a party here.

A-3561-16T2

Taylor Woodrow Blitman-Hoboken Urban Renewal Corp. (Taylor), to develop an office building (lot 1) and adjacent parking garage (lot 2) as part of a 1967 urban renewal known as the Hudson Street Renewal Project (Urban Renewal Plan). Under the Urban Renewal Plan, every "successor and assign" of the developer and "every successor in interest to the [p]roperty" was to "[d]evote the [p]roperty to . . . the uses specified in the Urban Renewal Plan." That agreement and covenant was to run with the land and remain in effect at least until September 20, 1997. The Urban Renewal Plan contemplated "[c]onnections between the parking areas and other adjacent uses" that were to be "through special pedestrian walkways and/or elevators and escalators." It expressly contemplated "air rights," providing that other permitted uses could be "constructed above the garage." In 1970, the Hoboken Housing Authority Housing Authority (Housing Authority) transferred title and possession of lots 1 and 2 to Taylor for construction of the building and garage.

In May 1970, Taylor sold part of the land to the Parking Authority, but reserved to itself "an easement for the purpose of constructing and using certain [rooftop] improvements." So long as Taylor maintained these improvements, Parking Authority could not grant this easement to another person. Taylor had "the right of ingress and egress over the 32-foot width of the service road and

3

walk" that is between the office building and the parking garage. Taylor retained the lot where the office building was to be built.

Taylor sold the office building lot to Bernard F. Kenny in September 1973. Handwritten on that deed after Bernard F. Kenny's name is the phrase "doing business as Bekay Engineering & Development Company" (Bekay Engineering). Bekay Engineering was a partnership comprised of Bernard F. Kenny and his wife, Helen. This sale was subject to "conditions and easements" and expressly referenced the Urban Renewal Plan. The covenants mentioned "run [] with the land" and were to remain in effect at least until September 1997.

The office building property was conveyed from Bekay Engineering to Bekay Urban Renewal Associates (Bekay Urban) by deed dated March 2, 1979.[2] Bekay Urban also was a partnership comprised of Bernard F. Kenny and Helen. This sale was subject to the conditions and easements as are set forth and required under the 1967 contract between Taylor and the Housing Authority and the 1970 Agreement between Taylor and the Parking Authority. As such, following the 1979 conveyance, the property was still to conform to the Urban Renewal Plan.

---

[2] The record does not explain, nor do the parties, the purpose of this conveyance.

4

Another agreement, central to this appeal, was entered into in July 1979 (the 1979 Agreement) and secured three things: a license for tenants of the office building to park in the garage, an ingress/egress easement and an easement for rooftop improvements. In the 1979 Agreement, Bekay Engineering is identified as the "designee and agent" for Bekay Urban, the owner of the office building. The 1979 Agreement provided that tenants of Bekay Urban in the office building were to have a renewable license to park in the garage. "Bekay"[3] also had "the right of ingress and egress over the 32-foot width of the service road and walk adjacent thereto between [the office building and the parking garage]," and was to maintain this area and indemnify the Parking Authority for any liability. Bekay acknowledged it was indebted to the Parking Authority for $85,000, which was the cost for "additional foundation and support" provided by the Parking Authority, for anticipated rooftop improvements. Bekay agreed to pay this in ten annual installments, and to execute a mortgage for this amount. The 1979 agreement provided the Parking Authority "has granted and hereby grants to Bekay an easement for the purpose of constructing and using [r]ooftop

---

[3] Bekay Engineering as "designee and agent" for Bekay Urban is referred to as "Bekay" in the 1979 Agreement. Bekay Urban is referred to as "Associates." Our reference to "Bekay" simply reflects the use of that term by the parties in the 1979 Agreement.

[i]mprovements" on the parking garage (the rooftop improvements easement). Bekay also could assign the rooftop improvements easement for the purpose of constructing and using the improvements. Bekay agreed to indemnify Parking Authority against liability for the rooftop improvement easement and to maintain it. If it did not, Parking Authority could terminate the easement. The rooftop improvements were to conform to the requirements of the Urban Renewal Plan. This agreement was binding on the parties' "respective successors in title or interest and assigns."

Bekay Engineering signed ten promissory notes to pay the Parking Authority for the additional foundation and support needed for rooftop improvements. These notes were paid by Bekay Urban.

In January 1986, Bekay Urban executed an eighty-four month $12 million note with an interest rate of 11.50 percent and mortgage to Travelers Indemnity Company (Travelers). The mortgage encumbered the office building and "all easements, rights-of -ways, gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water rights and powers, and all estate, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the premises . . . ." Under this agreement, Bekay Urban could not

6

"sell, convey, transfer condominiumize or alienate its interest in the premises or any part thereof." This included any assignments, which would have constituted an event of default. Schedule A of the mortgage expressly referenced the right of ingress and egress over the service road but did not mention the rooftop easement. Bekay Urban defaulted on the note for non-payment in November 1991. Travelers filed a foreclosure complaint; a final judgment of foreclosure was entered on September 3, 1992. Travelers bought the property at the Sheriff's sale on June 11, 1993, which included "all . . . the rights, liberties, privileges, hereditaments and appurtenances thereto belonging or in anywise appertaining" to the property as set forth in the Writ of Execution.

Travelers conveyed the property on June 23, 1994 to K/B Opportunity Fund I, LP (K/B). Under a separate "Assignment and Assumption of Parking Agreement" on June 23, 1994, Travelers assigned to K/B all "right, title and interest" that it had in the 1979 Agreement between Bekay Urban and the Parking Authority.[4] Then, on October 12, 1998, K/B conveyed the property to plaintiff Hoboken Associates LP (Hoboken LP). That deed contained a general

---

[4] The fact that Bekay Urban received the benefit of this agreement is supported by the June 23, 1994 "Assignment and Assumption of Parking Agreement" between Travelers and K/B Opportunity Fund I, LP (K/B), which referred to the 1979 Agreement as one between Bekay Urban and the Parking Authority.

grant of "all privileges, easements, tenements and appurtenances thereon or in any way appertaining to such real property." There was not a separate assignment of the 1979 Agreement.

Bernard F. Kenny died in 1988. Under a codicil to his will, a family share trust was to be funded from his interests in, among other things, the office building and "the air rights over [the parking garage]." His interests in his partnerships passed to this wife, Helen Kenny.

Relevant here, after the sheriff's sale of the office building in June 1993 and before Travelers sold the building to K/B in June 1994, Bekay Urban and Helen Kenny signed an "assignment and assumption" agreement on May 16, 1994. That agreement purported to assign to Helen Kenny all the rights Bekay Urban had in the 1979 Agreement with the Parking Authority. This was to include "an easement in gross for the construction and use of rooftop improvements on [the parking garage]." The 1994 agreement noted that Bekay Urban had dissolved as a partnership as of December 13, 1993 and designated Helen Kenny as the liquidating partner to distribute the assets of Bekay Urban.

Helen Kenny has passed away. Defendant is the executrix of her estate.

In 2015, plaintiff asked to meet with the City about use of the rooftop improvements easement "to provide much needed recreational facilities for

8

Hoboken residents," asserting its right to develop the roof over the garage as part of its ownership of the adjacent office building. Defendant objected, claiming entitlement to the easement.

Plaintiff filed this quiet title action in October 2015, seeking judgment that it is the "exclusive owner and beneficiary" of the rooftop improvements easement, and not defendant.[5] Defendant filed an answer and counterclaims. Following discovery, both parties filed motions for summary judgment.

On May 13, 2017, the court ordered that title to the rooftop easement "be and remain part of the bundle of rights appurtenant to the fee ownership of the adjacent office building." The trial court relied on the 1979 Agreement in its written opinion, holding that Bekay Urban held title to the rooftop easement, not Bekay Engineering, and that the easement was appurtenant to the office building, which is the dominant tenement. The court found "the 1979 Agreement [with the Parking Authority] created a series of easements meant to act in tandem to benefit the [office building] by giving its tenants access to parking and planned rooftop amenities. These benefits create[d] a dominant/servient tenement relationship generated by an easement

---

[5] The verified complaint included counts for a declaratory judgment, injunctive relief, compensatory and punitive damages, and damages for slander of title.

appurtenant." The trial court concluded "the [1986] mortgage encumbered the [rooftop e]asement, and that Bekay Urban lost any rights it had to the [e]asement once Travelers foreclosed in 1993." Because plaintiff is the successor in interest to Travelers, it "is the proper title holder to the [e]asement."

On appeal, defendant argues that the trial court erred in finding the rooftop easement was "appurtenant" to the office building (dominant tenement) and not an easement in gross. Defendant claims the rooftop easement was not encumbered by the Travelers mortgage and, as such, was not included within the foreclosure judgment.

We disagree with these arguments, concluding there was ample evidence to support the trial court's findings that Bekay Urban had title to the rooftop easement; that the easement was made appurtenant to the office building under the 1979 Agreement with the Parking Authority, and that the rooftop easement was foreclosed upon in 1993, rendering the purported transfer in 1994 from Bekay Urban to Helen Kenny a legal nullity.

## II.

We review a trial court's orders granting or denying summary judgment under the same standard employed by the motion judge. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). The question is whether the evidence, when

viewed in a light most favorable to the non-moving party, raises genuinely disputed issues of fact sufficient to warrant resolution by the trier of fact, or whether the evidence is so one-sided that one party must prevail as a matter of law. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016); see also Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). Our review is plenary. Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) (providing that an appellate court reviews a summary judgment order applying the same standard as the motion judge). Our review of a trial court's legal interpretations, including the interpretation of an easement or a contract, is de novo. Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013); Yellen v. Kassin, 416 N.J. Super. 113, 119 (App. Div. 2010). Having reviewed the record in light of the applicable standards of review, we find that the trial judge's findings of fact are supported by substantial credible evidence. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84 (1974).

## A.

Defendant contends the rooftop easement was an easement "in gross," and not an easement "appurtenant," because it was assignable to third parties independent of any conveyance of the land, and was neither necessary nor ancillary to use of the office building, but instead was intended to benefit the

public. Defendant relies on section four of the 1979 Agreement with the Parking Authority, which provided "Bekay" with an easement "for the purpose of constructing and using [r]ooftop [i]mprovement," which may "be assigned by Bekay to such corporation as may be designated by Bekay for the purpose of constructing and using the [r]ooftop [i]mprovements." Under the 1979 Agreement, Bekay then would "assign its rights and obligations" under paragraphs three and four of the agreement (dealing with the rooftop improvements).

An easement is a non-possessory interest in another's possessory estate in land that entitles the easement holder to make use of the other's property. Borough of Princeton v. Bd. of Chosen Freeholders of Cty. of Mercer, 333 N.J. Super. 310, 324 (App. Div. 2000). The land benefitting from the easement is known as the dominant tenement, while the land burdened by the easement is known as the servient tenement. State ex. rel. Comm'r of Transp. v. Dikert, 319 N.J. Super. 310, 316-17 (App. Div. 1999). "The air itself is not real property and is not conveyed; airspace, however, is real property when described in three dimensions with reference to a specific locus." Jersey City Chapter, P.O.P.A. v. Jersey City, 55 N.J. 86, 98 (1969) (quoting Conveyance and Taxation of Air Rights, 64 Colum. L. Rev. 338 (1964)).

Here, the trial court found the rooftop easement was appurtenant to the office building and not an easement in gross. An easement appurtenant is defined as "an easement created to benefit another tract of land, the use of easement being incident to the ownership of that other tract." Black's Law Dictionary 622 (10th ed. 2014). An easement in gross is defined as "an easement benefitting a particular person and not a particular piece of land." Black's Law Dictionary 623 (10th ed. 2014). "The distinction is 'that an easement appurtenant requires a [d]ominant [t]enement to which it is appurtenant, whereas an easement in gross belongs to its owner independently of his ownership or possession of any specific land.'" Rosen v. Keeler, 411 N.J. Super. 439, 450 (App. Div. 2010) (quoting Vill. of Ridgewood v. Bolger Found., 104 N.J. 337, 340 (1986)).

An appurtenant easement is created by "the owner of one parcel of property (the servient estate) grant[ing] rights regarding that property to the owner of an adjacent property (the dominant estate)." Ibid. That easement is said to "enhance[] the value of the dominant estate and cannot exist separate from the land itself." Ibid. (quoting Vill. of Ridgewood, 104 N.J. at 340). However, an easement in gross "benefits no specific parcel of land and remains independent of and unconnected to the ownership or possession of any particular

A-3561-16T2

tract." Ibid. There is a presumption that an easement is appurtenant "[w]hen a grant appears to create rights connected to the grantee's ownership of a certain piece of property." Id. at 450-51.

If the language of the easement is clear and unambiguous, "the terms of the instrument govern." Id. at 451. (quoting Hyland v. Fonda, 44 N.J. Super. 180, 187 (App. Div. 1957)). However, if the easement grant is ambiguous, "the surrounding circumstances, including the physical conditions of the servient tenement and the requirements of the grantee, play a significant role in the determination of the controlling intent." Ibid. "Questions concerning the extent of the rights conveyed by an easement require a determination of the intent of the parties as expressed through the instrument creating the easement, read as a whole and in light of the surrounding circumstances." Ibid.

> In construing a particular grant the court will consider the language used; the facts and circumstances existing at the time of the execution of the grant; the nature of the subject matter and the apparent purpose for the making of the instrument. It will seek to ascertain the intention of the parties and give it effect insofar as the rules of law will permit.
>
> [Weber v. Dockray, 2 N.J. Super. 492, 495 (Ch. Div. 1949).]

The 1979 Agreement with the Parking Authority unquestionably granted "an easement for the purpose of constructing and using rooftop improvements

14

[on the garage]." It states that it was granted to "Bekay." Defendant interprets this to mean the easement was granted to Bekay Engineering and plaintiff says it means Bekay Urban. The trial court correctly considered the surrounding circumstances in concluding the easement was granted to Bekay Urban. The 1979 Agreement provided that Bekay Engineering was the "designee and agent" of Bekay Urban. A "designee" is defined as "someone who has been designated to perform some duty or to carry out some specific role." Black's Law Dictionary 547 (10th ed. 2014). An agency relationship is defined as a relationship that arises when a person or entity (the principle) manifests assent to another (the agent) to act on the principle's behalf. Black's Law Dictionary 74 (10th ed. 2014). As such, we interpret the 1979 Agreement to mean that Bekay Engineering was designated to act on behalf of Bekay Urban for the purposes of establishing the 1979 Agreement. This interpretation is further supported by later documents, including the June 23, 1994 "Assignment and Assumption of Parking Agreement" between Travelers and K/B, which reference the 1979 Agreement as an agreement between Bekay Urban and the Parking Authority, and the 1994 Agreement that purported to transfer the easement from Bekay Urban to Helen Kenny.

15

The court did not err by looking at the rooftop easement in the context of the overall Urban Renewal Plan. Rooftop improvements and walkways from the office building to the parking garage were contemplated by the Urban Renewal Plan. It also anticipated the need for off-street parking and access to it by the walkways and by the ingress/egress easement. Under the 1968 agreement between Taylor and the City, any rooftop improvements were to be owned by the Parking Authority. The plans called for bridges from the office building to the parking garage. There is no evidence that this plan was modified by 1973 when Taylor sold the lot where the office building was to be built, to Kenny as Bekay Engineering. And, there is no evidence that the plan was modified in 1979 when Bekay Engineering transferred ownership of the office building to Bekay Urban[6] or later that year when Bekay Engineering, as designee and agent for Bekay Urban, the owner of the office building, signed the 1979 Agreement with the Parking Authority. By 1979, however, the 1979 Agreement stated that the certificate of occupancy had issued or was about to issue for the office building. It was entered into for the parties to protect their "respective rights" and performance of their "respective obligation." Bernard F. Kenny, Jr.

---

[6] We do not know if Bekay Engineering or Bekay Urban had different functions or even why there were two separate partnerships with the same partners.

A-3561-16T2

testified at his deposition that three issues became "ripe" at that time: parking; the service road; and payment for additional steel used for potential rooftop improvements. He testified that the Parking Authority wanted cars from the office building to park there; his father needed an easement for the purpose of servicing the building; and they negotiated what to pay for the reinforcing steel. At the same time, they also negotiated ownership of the potential rooftop improvements. In the 1979 Agreement, ownership of the improvements would be the property of Bekay and an express easement was granted to construct and use the rooftop improvements.

Thus, under the 1979 Agreement, licenses were granted to the tenants of the office building for parking. The ingress/egress easement kept the area between the garage and the office free from obstruction and allowed public use of the walkway. The rooftop amenities could be used to expand recreational opportunities for tenants and users of the building. All three combined to benefit the office building as part of the Urban Renewal Plan. Although the walkways connecting the building to the garage were not built, had they been, it is clear that use of this space could have affected the uses of the office building. Further, there is no indication in these documents that the easement could be used for something inconsistent with the Urban Renewal Plan.

17

The 1979 Agreement granted the easement to "Bekay," meaning Bekay Engineering who was the designee and agent of Urban. Bekay Engineering signed the notes for the $85,000 in improvements, but Bekay Urban actually paid for the improvements. Then, when the purported transfer of the rooftop easement was made to Helen Kenny in 1994, Bekay Urban was designated as the holder of this easement and it was Bekay Urban that signed the transfer. No one disputes that Bekay Urban owned the office building before its foreclosure. It was logical that it held the rooftop easement since it was the building to which the walkways were to be connected and would most directly benefit from those amenities.

Defendant's position depends largely on a portion of the 1979 Agreement that allowed the rooftop easement to be assigned. It claims this feature characterizes the easement as in gross rather than appurtenant. We think this is a narrow interpretation of the documents, which does not consider the surrounding circumstances or intent of the Urban Renewal Plan. Nor does it consider that once the property was mortgaged, Bekay Urban had no ability to assign the easement or else there would be a default under the mortgage. We do not need to reach the issue of whether this easement is one of those rare, changeable easements that starts out as appurtenant and ends as in gross. See

18

Rosen, 411 N.J. Super. at 449-51. The assignment provision was never exercised – nor could it be – once the property was mortgaged.

We also reject the argument that this easement was in gross because it did not solely benefit the office building. Although there is some language to this effect in Rosen, the better interpretation is to look at the easement as a whole and in light of the surrounding circumstances. Defendant readily concedes that the ingress/egress easement is appurtenant to the office building, yet that easement also benefits the general public who are not restricted from use of the walkway and are able to access the area between the garage and the office building. These building were part of the Urban Renewal Plan to revitalize that area of Hoboken. That the Plan benefited the public in some respects – and was inescapably part of the overall design – does not change the intent that the office building was to have access to the rooftop improvements as part of the originally designed bundle of rights and, after the 1979 Agreement, actual ownership of the improvements.

## B.

Defendant contends the trial court erred in finding the rooftop improvements easement was encumbered by the Travelers mortgage. Because defendant claims the rooftop easement was granted to Bekay Engineering, it

19

argues Bekay Urban had no right to encumber the easement by mortgage. Also, defendant contends the easement was not included in the lis pendens or the description attached to the mortgage in connection with the foreclosure action, and therefore, was not transferred to Travelers in the foreclosure.

We agree with the trial court that the rooftop easement was appurtenant to the office building that was owned by Bekay Urban in 1979. Although Bekay Engineering signed the 1979 Agreement with the Parking Authority, it did so as the designee and agent of Urban. Urban paid for the structural improvements that Parking Authority made to the garage to support the rooftop improvements. Defendant implicitly acknowledged that Urban held the easement pursuant to the 1979 Agreement, because it was the entity that purported to transfer its interest to Helen Kenny in 1994.

Bekay Urban mortgaged the office building in 1986. The mortgage expressly included "all easements [and] rights of ways," as well as "appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the premises . . . ." Because this was an easement appurtenant granted to Bekay Urban through its designee and agent, Bekay Engineering, the language in the mortgage was broad enough to include this easement. The mortgage document expressly provided that there was not to be an assignment

of any part of the property that was mortgaged. Thus, what was mortgaged (the premises and appurtenances) continued to be part of the property, was foreclosed once there was a default and was sold by Travelers to K/B and then to plaintiff. Bekay Urban then had no interest remaining to convey in the rooftop easement, rendering its subsequent transfer to Helen Kenny a legal nullity. We are not persuaded by defendant's argument that the lis pendens and mortgage mentioned the ingress/egress easement but not the rooftop easement. The mortgage did mention easements and was broad enough to include the rooftop easement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION